EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Maggie Acevedo Sepúlveda y otros<br><br>Recurridos<br><br>v.<br><br>Departamento de Salud<br><br>Peticionario | Certiorari<br><br>2014 TSPR 69<br><br>190 DPR ____ |

Número del Caso: CC-2012-1050

Fecha: 28 de mayo de 2014

Tribunal de Apelaciones, Región Judicial de San Juan, Panel II

Oficina del Procurador General:

    Lcdo. Luis Román Negrón
    Procurador General

    Lcda. Margarita Mercado Echegaray
    Procuradora General

    Lcda. Jeannette Ortiz Acosta
    Procuradora General Auxiliar

Abogados de la Parte Recurrida:

    Lcdo. Santiago A. Iturregui

Materia: Retención(Impugnación de Cesantía)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Maggie Acevedo Sepúlveda
y otros

     Recurridos

        v.

Departamento de Salud

     Peticionario

CC-2012-1050     Certiorari

SENTENCIA

San Juan, Puerto Rico, a 28 de mayo de 2014.

En el presente caso nos corresponde analizar si el Departamento de Salud cumplió con las normas y el procedimiento establecido por ley al cesantear a sus empleados por la privatización de las instalaciones médico-hospitalarias del Estado, por virtud de la Reforma del Sistema de Salud de Puerto Rico.[1]

Por entender que el Tribunal de Apelaciones erró al modificar la resolución de la Comisión Apelativa del Servicio Público (CASP) para ordenar la reinstalación de los empleados cesanteados, se

---

[1] Ley Núm. 72-1993.

modifica la sentencia recurrida y se ordena la devolución del caso a CASP para que calcule la paga atrasada que los empleados cesanteados dejaron de percibir, en cumplimiento con la norma expuesta en Hernández v. Mun. de Aguadilla, 154 DPR 199, 210 (2001), desde el momento en que ocurrió la cesantía ilegal de cada empleado hasta la fecha en que se vendió el último centro u hospital del Departamento. Pasemos, pues, a exponer los hechos que dieron origen a la controversia planteada en el caso de epígrafe.

I

La Sra. Maggie Acevedo Sepúlveda y otros recurridos (recurridos) ocuparon puestos regulares de carrera en el Hospital Regional de Ponce y en el Centro Médico de Mayagüez. Durante el 1999, el Departamento de Salud (Departamento) comenzó la privatización de algunas unidades del sistema de salud. Así las cosas, los recurridos fueron cesanteados.

Ante esta situación, el 20 de julio de 2000 los recurridos que laboraron en el Hospital Regional de Ponce presentaron una apelación ante la extinta Junta de Apelaciones del Sistema de Administración de Personal (JASAP).[2] Alegaron que mediante comunicación notificada

---

[2] En virtud de la Ley Núm. 184-2004, se eliminó la Junta de Apelaciones del Sistema de Administración de Personal (JASAP) y se creó la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH). No obstante, mediante el Plan de Reorganización Núm. 2-2010, se fusionó CASARH y la Comisión de Relaciones del Trabajo del Servicio Público, creándose la Comisión Apelativa del Servicio Público (CASP).

el 31 de mayo de 2000 la entonces Secretaria de Salud y Directora Ejecutiva de la Administración de Facilidades y Servicios de Salud (AFASS), Dra. Carmen Feliciano de Melecio, les notificó que quedarían cesanteados el 30 de junio de 2000. Igualmente, los recurridos que trabajaron en el Centro Médico de Mayagüez alegaron que la carta de cesantía que recibieron indicaba que serían cesanteados el 15 de octubre de 2000.[3]

En su apelación, los recurridos arguyeron que AFASS decretó las cesantías sin cumplir con la legislación aplicable, ya que las cesantías se realizaron sin utilizar el criterio objetivo de tiempo en el servicio. Además, alegaron que el Departamento no dio adecuada publicación al Plan de Cesantías, no lo puso a disposición de los empleados y no lo mencionó en las cartas de cesantías. Por otro lado, plantearon que: (1) no se les brindó la oportunidad de examinar el orden de prelación para cotejar si la antigüedad y clasificación de sus respectivos puestos eran correctas, (2) no fueron orientados adecuadamente sobre los derechos y beneficios marginales, (3) el Departamento no refirió a otras agencias las listas de los empleados afectados por la cesantía, (4) no existió Plan de Cesantías ni Registro de Antigüedad y Prelación y, (5) hubo selectividad en las reubicaciones realizadas al Departamento.

---

[3] El 19 de septiembre de 2002 los casos fueron consolidados bajo el nombre de Maggie Acevedo Sepúlveda y otros.

Al amparo de tales alegaciones, los recurridos solicitaron la reinstalación en sus puestos o la reubicación a un puesto de igual jerarquía dentro del Departamento, el pago de salarios y haberes dejados de percibir, la declaración de nulidad del Plan de Cesantías usado por el Departamento y la nulidad de sus cesantías. Como parte del proceso ante JASAP, los recurridos le solicitaron en repetidas ocasiones al Departamento que produjera copia de varios documentos.[4] Sin embargo y a pesar de órdenes de JASAP, el Departamento nunca los proveyó.

Luego de varios trámites procesales, JASAP emitió una resolución en la cual declaró no ha lugar la apelación de los recurridos. Concluyó que las cesantías se hicieron conforme a derecho, ya que el Departamento cumplió a cabalidad con el Plan de Cesantías.

---

[4] Los documentos requeridos fueron: (1)lista de puestos vacantes a la fecha de la implantación del Plan de Cesantías; (2) nombramientos efectuados luego de la implantación del Plan de Cesantías y seis meses antes; (3) copia del Registro de Reingreso; (4) documentos que evidencien el procedimiento utilizado para aplicar el Plan de Cesantías; (5) copia de la notificación entregada a los empleados en la cual se informan los años de servicios; (6) copia de los puestos y clases que se eliminaron con el Plan de Cesantías; (7) evidencia de que se le apercibió a los empleados de su derecho a presentar documentos sobre sus años de servicios; (8) documentos que evidencien que se le informó a los empleados que se pretendía implantar un Plan de Cesantías y las razones para ello; (9) evidencia de que los recurrentes recibieron copia del Plan de Cesantías; (10) copia del Listado de Prelación; (11) copia de las cartas enviadas a otros municipios o agencias para que tomaran en consideración a los empleados que serían cesanteados para una oportunidad de empleo; (12) copia del Registro de Puestos del Hospital Sub-Regional de Fajardo; (13) copia de la lista final de puestos y empleados reubicados y cesanteados durante el Plan de Cesantías; (14) evidencia de las gestiones realizadas para evitar el Plan de Cesantías; y, (15) copia del Presupuesto del Departamento y de la AFASS.

Inconformes con dicha determinación, los recurridos acudieron ante el foro apelativo mediante un recurso de revisión judicial. El 30 de junio de 2005, el Tribunal de Apelaciones emitió una sentencia en la cual revocó la resolución de JASAP. Fundamentó su decisión en que a los recurridos se les violó su derecho a ser oído y a confrontar la prueba en su contra, según lo dispone el debido proceso de ley. Así, ordenó a JASAP a celebrar una vista evidenciaria adversativa.

A tenor con lo resuelto por el foro intermedio y luego de varios incidentes procesales, el 7 de julio de 2011 CASP celebró una vista pública. Por parte del Departamento testificó la Sra. Luz Vázquez Correa, quien trabajó como Coordinadora del Programa Apoyo Organizacional del Departamento.[5] La señora Vázquez Correa explicó que el Departamento realizó varias conferencias en todas las instalaciones que fueron privatizadas para orientar a los empleados sobre la venta de dicho centro y sobre los derechos y beneficios a que tenían derecho. Añadió que la Oficina de Recursos Humanos de cada región estaba encargada de notificar a los empleados sobre las orientaciones. No obstante, el Departamento no presentó evidencia sobre las notificaciones que la Oficina de Recursos Humanos le

---

[5] El Departamento de Salud creó este grupo interdisciplinario compuesto por: sicólogos del Departamento, personal técnico de Recursos Humanos, representantes de la Administración de Sistemas de Retiro y representantes de la Asociación de Empleados del E.L.A. y del Departamento del Trabajo, para brindar orientación a los empleados que iban a ser cesanteados con motivo de la venta de los CDT y hospitales.

cursó a los empleados ni las listas de asistencias que se tomaron en las orientaciones.

Por otro lado, la señora Vázquez Correa testificó que **no** se utilizó el Plan de Cesantías que existía en el Departamento, sino que el proceso de cesantías se hizo en dos etapas. Según su testimonio, la primera etapa consistió en las orientaciones que se llevaron a cabo en cada facilidad y la segunda etapa fue la entrega de las cartas de cesantías a los empleados treinta días antes que la adquiriente tomara posesión de dicho centro. Así, las cesantías se hicieron según la venta de las instalaciones y no por la antigüedad de los empleados. Indicó que se realizó de esa manera porque como los hospitales se iban a vender no había que tener en cuenta los años de servicios de los empleados y, por lo tanto, la reubicación por antigüedad era inadecuada.

Por último, la señora Vázquez Correa declaró que AFASS preparó un listado con el nombre y datos de los empleados. Alegó que el listado se entregó en la Oficina de Recursos Humanos de cada región para que fueran ellos quienes verificaran la información con sus empleados. Luego, se envió a otras agencias gubernamentales por si necesitaban empleados de esas clasificaciones. Ahora bien, aclaró que no le consta si efectivamente los empleados de cada región tuvieron acceso a dicho listado y tampoco se presentó evidencia de que el listado se envió a otras agencias.

Por su parte, la prueba de los recurridos se basó en prueba de refutación. Presentaron como testigos al Sr. Julio Figueroa Ramírez, al Sr. Basilio A. Padilla Rivera, a la Sra. Luz E. Guzmán Cortés y a la Sra. Zenaida Rodríguez Cardona. En esencia, todos testificaron que nunca fueron citados para las orientaciones, nunca fueron orientados sobre el proceso de cesantía ni de sus derechos ni beneficios, no fueron reubicados y nunca vieron el listado de prelación. Ahora bien, a diferencia de los otros testigos, la señora Rodríguez Cardona testificó que fue entrevistada por el privatizador y este le ofreció un turno rotativo como enfermera, sin embargo, lo rechazó por no ser un turno fijo.

Luego de los testimonios antes mencionados, a petición de los recurridos y sin la objeción del Departamento, el caso quedó sometido por el expediente. El 14 de diciembre de 2011 CASP emitió una resolución en la que declaró ha lugar la apelación de los recurridos, excepto la de la señora Rodríguez Cardona, ya que de su testimonio surgió que ella rechazó el trabajo ofrecido por el privatizador. CASP concluyó que las cesantías no se llevaron a cabo según el Plan de Cesantías establecido por ley y que el listado de prelación no se puso en vigor. Así las cosas, ordenó la reinstalación de los empleados cesanteados con el abono de la paga atrasada dejada de percibir y la concesión de todos los

beneficios marginales a los que hubiesen tenido derecho durante el periodo de la cesantía ilegal. No obstante, determinó que a la paga dejada de percibir se le tenía que restar los haberes percibidos en otros trabajos durante dicho periodo, a la luz de la norma establecida en Hernández Badillo v. Municipio de Aguadilla, supra.

Inconformes, tanto la señora Rodríguez Cardona como el Departamento presentaron por separado una reconsideración ante CASP. Luego de evaluar las solicitudes, CASP modificó su resolución a los únicos efectos de que los recurridos no fueran reinstalados. Así modificada, CASP dispuso como único remedio que el Departamento pague a los recurridos los ingresos dejados de percibir con la reducción de los haberes percibidos en otros trabajos y los beneficios marginales a los que hubiesen tenido derecho. Por otro lado, denegó la solicitud de reconsideración de la señora Rodríguez Cardona.

Estando todas las partes inconformes con el dictamen de CASP, el 8 de marzo de 2012 presentaron por separado una revisión administrativa ante el Tribunal de Apelaciones. Ante esta situación y a petición del Departamento, el foro intermedio consolidó ambos recursos. Luego de evaluar el expediente y con el beneficio de la transcripción de la vista, el tribunal apelativo emitió una sentencia en la cual modificó la

resolución de CASP y ordenó además la reinstalación de los empleados cesanteados ilegalmente.

Oportunamente, el 29 de noviembre de 2012, el Departamento acudió ante esta Curia mediante el recurso de *certiorari* que nos ocupa y planteó los señalamientos de errores siguientes:

> **Erró el Tribunal de Apelaciones al determinar que la conclusión de la CASP de que las cesantías fueron ilegales surgió de la evidencia sustancial que obra en el expediente, analizada a la luz de las disposiciones legales y reglamentarias que no se siguieron por Salud.**
>
> **Erró el Tribunal de Apelaciones al confirmar el remedio del pago de los haberes dejados de percibir a casi todos los apelantes aunque no existe evidencia en el expediente administrativo respecto a cuáles de ellos fueron reclutados por la privatizadora adquiriente o no aceptaron el trabajo ofrecido por esta.**
>
> **Erró el Tribunal de Apelaciones al modificar la resolución recurrida para añadir la reinstalación a los empleados cesanteados a otras unidades o facilidades de Salud.**

## II

Evaluados los planteamientos esbozados por ambas partes, resolvemos que erró el Tribunal de Apelaciones al modificar la sentencia de CASP y ordenar la reinstalación de los empleados. El Departamento de Salud venía obligado a desarrollar un Plan de Cesantías utilizando el criterio de antigüedad en el servicio como el factor determinante para decretar las cesantías,

conforme a la Ley Núm. 5 de 14 de octubre de 1975[6] y al Reglamento Núm. 2186 adoptado por la Oficina Central de Administración de Personal (OCAP). No obstante y contrario a lo antes expuesto, el Departamento no siguió el criterio de antigüedad al realizar las cesantías. Por lo tanto, las cesantías fueron ilegales.

Ahora bien, con la aprobación de la Ley Núm. 190-1996, posteriormente derogada con la aprobación de la Ley Núm. 3-2003, el legislador permitió que el Gobierno abandonara su función de proveedor de servicios para convertirse en agente fiscalizador, evaluador y regulador de los sistemas de salud. Quiere decir que el Departamento se quedó con la única función de fiscalizar y regular los servicios de salud. Ante esta situación, los puestos que brindaban prestación directa médico-hospitalaria pasaron a las entidades privadas que adquirieron los centros y el Departamento mantuvo puestos administrativos.

Por lo tanto, a pesar de que las cesantías fueron ilegales no procedía ordenar la reinstalación de los recurridos. Ante la situación de que todos los centros fueron privatizados y el Departamento mantuvo únicamente puestos administrativos para regular los servicios de salud, no existen puestos análogos en el Departamento en

---

[6] 3 LPRA sec. 1301 *et seq*. Esta ley quedó derogada con la aprobación de la Ley Núm. 184-2004, mejor conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, 3 LPRA sec. 1461 *et seq.*

los cuales se puedan reinstalar a los empleados cesanteados ilegalmente.

Así las cosas, el único remedio disponible es que el Departamento abone la paga atrasada que los empleados cesanteados dejaron de percibir, restando los haberes percibidos en otros trabajos durante dicho periodo, y la concesión de todos los beneficios marginales a los que hubiesen tenido derecho durante el periodo de cesantías.

Por lo tanto, se modifica la sentencia recurrida en cuanto a que no procede la reinstalación y se devuelve el caso a CASP para que calcule la paga dejada de percibir desde el momento en que ocurrió la cesantía ilegal de cada empleado hasta la fecha en que se vendió el último centro u hospital del Departamento.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo emitió Opinión de conformidad a la cual se unió el Juez Asociado señor Martínez Torres. El Juez Asociado señor Estrella Martínez emitió Opinión de conformidad en parte y disidente en parte. La Juez Asociada señora Rodríguez Rodríguez emitió Opinión disidente. La Jueza Presidenta señora Fiol Matta no intervino.

                                 Aida Ileana Oquendo Graulau
                                Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Maggie Acevedo Sepúlveda
y otros

    Recurridos

      v.

Departamento de Salud

    Peticionario

CC-2012-1050    Certiorari

Opinión de conformidad emitida por el Juez Asociado señor Kolthoff Caraballo a la cual se unió el Juez Asociado señor Martínez Torres

San Juan, Puerto Rico, a 28 de mayo de 2014.

El presente recurso requiere que determinemos si el Departamento de Salud cumplió con el procedimiento establecido por ley al cesantear a sus empleados.

I

Los hechos del caso de epígrafe están muy bien expuestos en la Sentencia del Tribunal por lo que consideramos innecesario reproducirlos. Así, pasamos a discutir el derecho aplicable a la controversia ante nuestra consideración.

**II**

**A. Reforma del Sistema de Salud de Puerto Rico**

El Departamento de Salud es una agencia de Puerto Rico que tiene a su cargo todos los asuntos que se le encomienden por ley relacionados con la salud, sanidad y beneficencias públicas.[7] En el 1993, se inició lo que se conoce como la Reforma del Sistema de Salud de Puerto Rico (Reforma) con la aprobación de la Ley Núm. 72-1993.[8] Mediante esta ley se creó la Administración de Seguros de Salud de Puerto Rico (ASES). El propósito de esta ley y la responsabilidad de ASES era gestionar, negociar y contratar planes de seguros de salud que permitieran obtener para sus asegurados servicios hospitalarios de calidad.[9]

Posteriormente, la Asamblea Legislativa aprobó la Ley Núm. 190-1996,[10] para reglamentar el proceso de privatización. Esta ley se estableció de manera que se pudieran implementar los cambios introducidos por la Ley Núm. 72-1993, supra, a saber: (1) permitirle al Gobierno de Puerto Rico abandonar su función tradicional de proveedor de servicios, para convertirse en agente fiscalizador, evaluador y regulador de los sistemas de

---

[7] Véase la Ley Núm. 81 de 14 de marzo de 1912, según enmendada, 3 LPRA secs. 171-190.

[8] Ley Núm. 72-1993, mejor conocida como la Ley de la Administración de Seguros de Salud de Puerto Rico (ASES), 24 LPRA sec. 7001 *et seq.*

[9] Exposición de Motivos de la Ley Núm. 72-1993.

[10] Ley Núm. 190-1996, mejor conocida como la Ley para Reglamentar el Proceso de Privatización de las Instalaciones de Salud Gubernamentales, 24 LPRA sec. 3301 *et seq.*

salud y asumir el papel de promotor de la salud y de procurador del paciente, y (2) permitirle al Gobierno arrendar y transferir a entidades privadas las instalaciones de salud pública para que estas entidades las operen como empresas privadas, sujeto a las leyes del mercado y la libre competencia.[11] Así, la ley le concedió al Secretario de Salud la discreción necesaria para arrendar, subarrendar, vender, ceder, permutar o transferir permanentemente las instalaciones de salud cuya titularidad pertenecían al Gobierno, agencias o instrumentalidades.[12]

Por otro lado, el Art. 19 de la Ley Núm. 190-1996, *supra*, estableció el procedimiento a seguir con los empleados que no pasaran a trabajar con el privatizador. En lo pertinente, el artículo disponía que:

> [e]n cuanto a los empleados regulares del Departamento de Salud que laboren en la instalación o instalaciones al momento de tal privatización, y que no pasen a ser empleados de la entidad contratante, se les garantizará sus derechos a tono con lo dispuesto en el inciso (d), Artículo 6 de la Ley Núm. 5 de 6 de abril de 1993, conocida como "Ley de Reorganización Ejecutiva de 1993".

Ahora bien, con la aprobación de la Ley Núm. 31-1997[13] se enmendó el antes citado Art. 19 de la Ley Núm. 190-1996. El legislador expresó que los derechos de los empleados que no fueran contratados por el

---

[11] Exposición de Motivos de la Ley Núm. 190-1996.

[12] 24 LPRA sec. 3303.

[13] Ley Núm. 31-1997, mejor conocida como la Ley para Reglamentar el Proceso de Privatización de las Instituciones de Salud Gubernamentales. Esta ley enmendó varios artículos de la Ley Núm. 190-1996.

privatizador se garantizarían a tenor con la Ley Núm. 5 de 14 de octubre de 1975, mas no con la Ley Núm. 5-1993 como disponía antes. Además, creó un registro interagencial para los empleados que no fueran seleccionados por el privatizador. Así, los empleados que se añadieran al registro serían considerados preferentemente para puestos iguales o similares al que ocupaban que estuvieran vacantes en cualquier agencia o corporación pública.[14] La Sec. 15 de la Ley Núm. 31-1997 estableció:

> Artículo 19. El arrendamiento, subarrendamiento, venta, cesión, permuta o contratación mediante cualquier otro modelo de contratación que el Secretario, en unión con el Banco, determine conforme a la discreción que le confiere esta Ley, con relación a una o más instalaciones de salud gubernamentales a una entidad o intereses privados no establecerá relación de patrono y empleado entre el contratista y el Banco ni entre el contratista y el Departamento y así se establecerá en el contrato. **En cuanto a los empleados regulares del Departamento que laboren en la instalación o instalaciones al momento de tal privatización, y que no pasen a ser empleados de la entidad contratante, el Departamento velará por el cumplimiento de las disposiciones de la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, y las otras leyes y reglamentos aplicables.** La entidad contratante no incurrirá en responsabilidad alguna con aquellos empleados del Departamento que no emplee.
>
> La Oficina de Gerencia y Presupuesto y la Oficina Central de Administración de Personal serán partícipes, junto al Secretario, de la coordinación necesaria los efectos del proceso de reubicación y cesantías. **Se creará un registro especial en dichas agencias para conceder preferencia a los empleados que no sean transferidos a las empresas adquirientes para su reubicación a través de los diferentes organismos gubernamentales y en la empresa privada.**

---

[14] Sec. 15 de la Ley Núm. 31-1997.

> Para lograr este propósito el Secretario, en unión con la Oficina de Gerencia y Presupuesto, nombrarán un Coordinador de Reubicación. Este funcionario establecerá las normas para el referimiento y selección de los candidatos a los diferentes organismos gubernamentales. También coordinará con la Administración de Fomento Comercial la extensión de los beneficios del Programa Vale Empleo y Vale Empleo Plus de forma preferencial a todos los empleados que no sean transferidos a las empresas adquirientes. El Departamento del Trabajo dará prioridad a los empleados cuyos nombres aparecen en dicho registro, en sus programas de empleo, reempleo y adiestramiento, tales como los adiestramientos profesionales por la Administración del Derecho al Trabajo y los del Negociado de Fomento al Trabajo." (Énfasis nuestro).

Por otra parte, la Sec. 26 de la Ley Núm. 31-1997 dispuso que esos empleados que no pasaran a trabajar con el privatizador también serían incluidos en cualquier plan de reubicación que cree la Oficina de Gerencia y Presupuesto (OGP) o cualquier otra agencia gubernamental en coordinación con el Secretario del Departamento de Salud (Secretario).[15]

Finalmente, en el 1998 la Asamblea Legislativa disolvió la AFASS como entidad jurídica mediante la aprobación de la Ley Núm. 187-1998. Esta ley facultó al Secretario a que conjuntamente con la OGP y con la aprobación del Gobernador de Puerto Rico llevara a cabo cambios organizacionales, incluyendo: consolidar, modificar, abolir, suprimir o crear cualquier programa, plan o proyecto para lograr la consolidación de AFASS

---

[15] Sec. 26 de la Ley Núm. 31-1997.

con el Departamento.[16]     Ahora bien, la ley específicamente expresó que no podía afectar o eliminar ningún programa establecido por ley sin el consentimiento de la Asamblea Legislativa.[17]   Por otro lado, la ley facultó también al Secretario a "recibir y AFASS a transferir personal, récords, documentos, archivos, equipo, materiales, fondos disponibles y el uso de las facilidades de salud".[18]

**B. Ley de Personal del Servicio Público y la reglamentación aplicable.**

La ley que regía el sistema de personal del servicio público al momento de las cesantías en el Departamento era la Ley Núm. 5 de 14 de octubre de 1975, mejor conocida como Ley de Personal del Servicio Público (Ley Núm. 5).[19]   La política pública de esta ley fue extender el principio de mérito a todo el servicio público, incluso a las agencias e instrumentalidades excluidas por esta ley.[20]   Este principio conlleva a que los más aptos, de acuerdo con sus méritos y capacidades, sean los que sirvan al Gobierno.   Así, el Estado obtendría los más altos niveles de excelencia,

---

[16] Art. 2 de la Ley Núm. 187-1998.

[17] Íd.

[18] Art. 3 de la Ley Núm. 187-1998.

[19] 3 LPRA sec. 1301 *et seq.*   Esta ley quedó derogada con la aprobación de la Ley Núm. 184-2004, mejor conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, 3 LPRA sec. 1461 *et seq.*

[20] Art. 2, Sec. 2.1(1) de la Ley Núm. 5 de 14 de octubre de 1975, 3 LPRA sec. 1311(1).   Véase Rodríguez v. Bco. Gub. de Fom. P.R., 151 DPR 383 (2000).

eficiencia y productividad en los servicios que brinda.[21] Además, este principio vela porque todo empleado sea seleccionado, adiestrado, ascendido y retenido en su empleo con exclusiva atención a sus méritos, para así evitar el discrimen.[22]

Por otro lado, en el principio de mérito el derecho a la retención del empleo es fundamental. Así, los empleados públicos de carrera tienen una expectativa de continuidad en el empleo.[23] Ahora bien, el derecho a la retención del empleo tiene sus limitaciones. Por lo tanto, no existe un derecho adquirido a la retención o a no ser cesanteado de un empleo en el servicio público.[24] No obstante, los empleados públicos de carrera no pueden ser privados de sus empleos sin que se cumplan con los procedimientos establecidos por ley, ya que estos forman parte del debido proceso de ley.[25] **A su vez, las agencias administrativas están obligadas a seguir estrictamente los reglamentos que ellas misma**

---

[21] Art. 2, Sec. 2.1(1) de la Ley Núm. 5, *supra*. Véase Torres Solano v. PRTC, 127 DPR 499, 514 (1990).

[22] Art. 2, Sec. 2.1(1) de la Ley Núm. 5, *supra*. Véanse, además, Martínez v. Ofic. del Gobernador, 152 DPR 586, 596 (2000); Rodríguez Román v. BGF, 151 DPR 383, 410 (2000); Olivieri Morales v. Pierluisi, 113 DPR 790, 797-798 (1983).

[23] Domínguez Castro et al. v. E.L.A., 178 DPR 1, 69 (2010); Vázquez Cintrón v. Banco Desarrollo, 171 DPR 1, 21 (2007); García v. Mun. de Arroyo, 140 DPR 750, 754 (1996).

[24] Domínguez Castro et al. v. E.L.A., supra.

[25] 3 LPRA sec. 1336. Véanse, además, Domínguez Castro et al. v. E.L.A., supra; Camacho Torres v. AAFET, 168 DPR 66, 81 (2006); U. Ind. Emp. A.E.P. v. A.E.P., 146 DPR 611, 618 (1998); Depto. Recs. Naturales v. Correa, 118 DPR 689, 694 (1987).

**promulgaron y no queda a su discreción reconocer o no los derechos que le extendieron a sus empleados.**[26] Quiere decir que "una vez se ha adoptado una norma, la agencia administrativa debe cumplirla y aplicarla en la manera en que está concebida".[27]

Antes de analizar la Ley Núm. 5, entiendo que es importante aclarar la diferencia entre "cesantía" y "destitución" para determinar qué secciones de la mencionada ley aplican al caso de referencia. Veamos.

A través de los años, este Tribunal ha analizado y resuelto casos similares al de autos relacionados con cesantías y destituciones.[28] Ahora bien, aunque nunca hemos definido estos dos términos, sí los hemos distinguido. Por ejemplo, a pesar de que en <u>Depto. Recs. Naturales v. Correa</u>, 118 DPR 689 (1987), la controversia era si un empleado público, con nombramiento transitorio, tenía un interés legítimo de retención en el empleo una vez expirado el término de su designación, expresamos que "no estamos ante una suspensión o destitución sino ante una cesantía en el cargo". Como se puede observar, con esa expresión

---

[26] <u>T-JAC, Inc. v. Caguas Centrum Limited</u>, 148 DPR 70, 81 (1999); <u>García Cabán v. U.P.R.</u>, 120 DPR 167, 175 (1987).

[27] <u>T-JAC, Inc. v. Caguas Centrum Limited</u>, supra.

[28] <u>Domínguez Castro v. E.L.A.</u>, 178 DPR 375, 435 y 437 (2010); <u>Rodríguez v. Bco. Gub. de Fom. P.R.</u>, 151 DPR 383, 413 (2000); <u>Carrón Lamoutte v. Compañía de Turismo</u>, 130 DPR 70, 95 (1992); <u>Depto. Recs. Naturales v. Correa</u>, 118 DPR 689, 697 (1987); <u>Calzada Quiñones v. D.A.C.O.</u>, 114 DPR 757, 760 (1983); <u>Delbrey v. Municipio de Carolina</u>, 111 DPR 492, 494 (1981).

quisimos aclarar que "destitución" no es lo mismo que "cesantía" y señalamos que en ese caso en particular nos encontrábamos ante una cesantía.

Nótese que, a pesar de que en las leyes de personal de servicio público el legislador tampoco ha definido estos términos, sí ha expresado claramente que son diferentes: **cesantías no se entenderán como destituciones.**[29] Así, en la ley vigente sobre el personal del servicio público, Ley Núm. 184-2004, mejor conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, el legislador creó una sección sobre las destituciones y otra distinta sobre las cesantías. En cuanto a las destituciones el Art. 6, Sec. 6.6 (3) establece que:

> Cuando la conducta de un empleado no se ajuste a las normas y requerimientos establecidos, cada agencia deberá tomar **las medidas correctivas o acciones disciplinarias necesarias y adecuadas.** Entre otros, se podrá considerar la amonestación verbal, reprimenda escrita, la suspensión de empleo y sueldo y la **destitución.** (Énfasis nuestro).

Por otro lado, el Art. 6, Sec. 6.6 (9) dispone sobre las cesantías y expresa que:

> **Se podrán decretar cesantías en el servicio, <u>sin que constituya acción disciplinaria o destitución</u>, en las siguientes circunstancias:**
>
> (a) debido a la eliminación de puestos por falta de trabajo o de fondos. En estos casos,

---

[29] Art. 6, Sec. 6.6 (9) de la Ley Núm. 184-2004; Art. 4, Sec. 4.6 (6) de la derogada Ley Núm. 5.

> las cesantías se decretarán dentro de los grupos de empleados cuyos puestos tengan el mismo título de clasificación y considerando dentro de cada grupo el status de los empleados, su productividad, hábitos y actitudes reflejadas en sus evaluaciones y su antigüedad en el servicio. A los fines de determinar antigüedad, se considerará todo servicio prestado en puestos de las agencias comprendidas en el Sistema. (Énfasis nuestro).

Precisado lo anterior, las cesantías son una medida dentro de la facultad que otorga la ley, lo cual no se estima como una acción disciplinaria. Estas pueden ocurrir por la eliminación de puestos por falta de trabajo, presupuesto o la determinación de que el empleado está física o mentalmente incapacitado para desempeñar los deberes de ese puesto. Por lo tanto, las cesantías no son prerrogativas del patrono.[30]

Por otro lado, la destitución es una sanción como acción disciplinaria que tiene el resultado de desvincular al empleado totalmente del servicio público. Quiere decir, que es prerrogativa del patrono destituir a un empleado como medida disciplinaria. A tenor de lo anterior, una cesantía, contrario a una destitución, no constituye un factor negativo, en contra del empleado, para este volver a solicitar empleo en la misma agencia o en otra agencia gubernamental.

Conforme a lo anterior vemos, a manera de analogía, que existen varios reglamentos de distintas agencias en los cuales han definido y diferenciado lo

---

[30] N.L.B.R. v. Advertisers Mfg. Co., 823 F.2d 1086 (7mo Cir. 1987).

que es una cesantía y una destitución.[31]  Todos estos reglamentos han expresado que cesantía es "la separación del servicio impuesta a un empleado debido a la eliminación de su puesto por falta de trabajo o de fondos, o por estar física y/o mentalmente incapacitado para desempeñar los deberes del puesto que ocupa".[32] Mientras que destitución lo han definido como "la separación total y absoluta del servicio impuesta a un empleado como medida disciplinaria por justa causa".[33]

Así, pues, conociendo la diferencia de ambos términos, el legislador claramente expresó en la Ley Núm. 5 que las cesantías no se entenderán como destitución.  En lo pertinente, dispuso en la Sec. 4.6 (6) que **"se podrán decretar cesantías en el servicio sin que esto se entienda como destitución".**  Asimismo, en el Reglamento Núm. 2186 se estableció la Sec. 9.2 sobre acciones disciplinarias, en la cual se dispuso sobre las destituciones y, por otro lado, se creó la Sec. 9.3 en la cual se establecieron las normas sobre las cesantías. En esta última sección se expresó que la cesantía no se

---

[31] Algunos de estos reglamentos son: Arts. 5(E) y 5(K) del Reglamento Núm. 6222, mejor conocido como Reglamento de Personal de la Compañía de Turismo; Arts. 7(10) y 7(17) del Reglamento Núm. 8117, mejor conocido como Reglamento de Personal de la Autoridad de Tierras de P.R.; Art. 105.4 del reglamento Núm. 4453, mejor conocido como el Reglamento de Personal de la Autoridad de los Puertos de P.R.; Arts. 4(10) y 4(17) del Reglamento Núm. 4117, mejor conocido como el Reglamento de Personal de Servicio de Carrera del Departamento de Justicia.

[32] Íd.

[33] Íd.

entendería como una destitución. **Por lo tanto, el propio ordenamiento jurídico provee para que "[se pueda] decretar cesantías en el servicio, sin que constituya acción disciplinaria [o] destitución [en caso de] la eliminación de puestos por falta de trabajo o de fondos".**[34] Así las cosas, cuando la letra de la ley es clara y libre de toda ambigüedad, su letra no debe ser menospreciada bajo el pretexto de cumplir con su espíritu.[35] Por lo tanto, las secciones aplicables en el presente caso son las Secs. 4.6 y 5.18 de la Ley Núm. 5, las cuales expresan los procedimientos a seguir en casos de cesantías.

Aclarado lo anterior, pasemos a analizar las secciones de la Ley Núm. 5 aplicables a este caso. La Sec. 4.6 de la Ley Núm. 5,[36] estableció las causas para decretar las cesantías de los empleados. En lo pertinente, dispuso que:

> (6) Se podrán decretar cesantías en el servicio sin que esto se entienda como destitución, en los siguientes casos:
> (a) **Debido a la eliminación de puestos por falta de trabajo o de fondos,** o
> (b) ...
> En la situación descrita en la cláusula (a) de este inciso **la separación del servicio se hará según se establezca mediante reglamento al respecto en el que se tome en consideración entre otros factores el**

---

[34] Domínguez v. E.L.A., supra, pág. 437.

[35] Art. 14 del Código Civil de Puerto Rico, 31 LPRA sec. 14.

[36] 3 LPRA sec. 1336.

**status de los empleados y su antigüedad
y el tiempo en servicio**.
            (c) ...
        (Énfasis nuestro).

La Ley Núm. 5 también estableció el derecho de los empleados cesanteados por eliminación de puestos a que sus nombres fuesen incluidos en un "registro de elegibles correspondientes a las clases de puestos que ocupaban con carácter regular u otras similares".[37] Además, el inciso 5 de la Sec. 5.18 de la Ley Núm. 5, expresó que:

> Las condiciones, el orden y la forma en que los nombres han de colocarse en el registro será establecida por las normas que se promulguen al efecto.

A tenor de lo anterior, la Oficina Central de Administración de Personal (OCAP) adoptó el Reglamento Núm. 2186, mejor conocido como el Reglamento de Personal: Áreas Esenciales al Principio de Mérito (Reglamento Núm. 2186). Este reglamento decretó las normas generales que regirían a través de todo el sistema de personal del servicio público para cumplir con el principio de mérito.[38] Así, el Reglamento Núm. 2186 estableció el principio de mérito en las áreas indispensables, como lo son: clasificación de puestos, reclutamiento, selección de servidores públicos,

---

[37] Sec. 5.18 (1) de la Ley Núm. 5, 3 LPRA sec. 1358(1).

[38] Véase Introducción del Reglamento Núm. 2186.

ascensos, traslados, descensos, adiestramientos y la retención de empleados en el servicio.[39]

En lo pertinente al caso de autos, el Art. 9, Sec. 9.3(1) del mencionado reglamento estableció todo lo relacionado a la cesantía de empleados públicos debido a la eliminación de puestos por falta de trabajo o fondos. En primer lugar, este artículo dispuso que la autoridad nominadora tenía que adoptar un método o plan para decretar las cesantías.[40] Añadió que "[c]omo parte de dicho método se podrá subdividir la agencia por programas, unidades, oficinas regionales u oficinas locales a los fines de identificar las jurisdicciones en las cuales habrán de decretarse las cesantías".[41] El Art. 9, Sec. 9.3(1)(a), *supra*, estableció que una vez se adoptara dicho método se tenía que poner en conocimiento de todos los empleados.[42]

Por otro lado, el Art. 9, Sec. 9.3(1)(b) del Reglamento Núm. 2186, fijó el orden de prelación en que las cesantías debían decretarse. Dispuso que en primer término se tenían que cesantear los empleados transitorios, en segundo lugar los empleados probatorios y en última instancia los empleados regulares.[43] Ahora

---

[39] Íd.

[40] Art. 9, Sec. 9.3(1)(a) del Reglamento Núm. 2186.

[41] Íd.

[42] Íd.

[43] Art. 9, Sec. 9.3(1)(b) del Reglamento Núm. 2186.

bien, la Sec. 9.3(1)(c) de ese mismo artículo especificó cómo se iba a determinar el orden de prelación. Esta sección estableció que:

> (c) Para determinar el orden de prelación en que se decretarán las cesantías dentro de cada uno de los grupos de empleados enumerados en el inciso (b) que precede, la autoridad nominadora se ajustará a las siguientes normas:
>
> > 1) se tomará en consideración el desempeño de las funciones, de manera que queden cesantes, en primer término los empleados menos eficientes. **En casos de igualdad de eficiencia, se tomará en consideración el tiempo en el servicio de manera que queden cesantes los empleados con menos tiempo en el servicio.**
> >
> > 2) a falta de información válida para determinar el desempeño en las funciones, **el factor determinante será el tiempo en el servicio, de manera que la persona de más reciente nombramiento en el servicio será la primera en cesar.** (Énfasis nuestro).

## III

En el presente caso, el Departamento arguye que las cesantías fueron legales, ya que cumplió con todas las disposiciones establecidas por ley. No le asiste la razón.

En primer lugar, el Departamento no presentó evidencia fehaciente de que haya establecido e implantado un Plan de Cesantías con todo lo que ello puede suponer e implicar. Como bien concluyó CASP y el Tribunal de Apelaciones, aunque en el expediente se incluyó un documento de varias páginas, firmado por la entonces secretaria del Departamento, la doctora

Feliciano de Melecio, no puede colegirse con precisión que se trate, efectivamente, del Plan de Cesantías al que el Departamento hace alusión en su escrito. Tampoco surge evidencia de que el alegado plan fue comunicado a los recurridos, como lo exigen las disposiciones legales y reglamentarias que hemos analizado. Por el contrario, del testimonio de la única testigo que presentó el Departamento, la señora Vázquez Correa, surge con claridad que aquella no pudo constatar que, en efecto, el alegado Plan de Cesantías fue comunicado a los recurridos. Tampoco pudo demostrar que los recurridos fueron orientados con respecto al procedimiento de cesantías o hubiesen tenido acceso al listado de prelación que alegadamente la agencia preparó.

No obstante, si tomáramos como cierto que el Departamento preparó un Plan de Cesantías conforme lo requiere la ley, un examen objetivo de las circunstancias que rodearon las cesantías de los recurridos nos lleva inevitablemente a concluir que la agencia no lo implementó. Veamos.

Como mencionáramos anteriormente, la Ley Núm. 31-1997 estableció que el Departamento tenía de velar por el cumplimiento de las disposiciones de la Ley Núm. 5, *supra*, en cuanto a los empleados regulares del Departamento que fueran cesanteados. Así, la Sec. 4.6 de la Ley Núm. 5 disponía que se podían decretar las cesantías por la eliminación de puestos, siempre que tal

eliminación se hiciera según lo establecido por reglamento, pero tomando en consideración el status de los empleados, su antigüedad y el tiempo en el servicio; entre otros factores. Ante este pronunciamiento, el Departamento alegó que esos factores no eran los únicos que se tenían que tomar en consideración y, por lo tanto, el listado era uno *numerus apertus*. Al analizar la ley podemos concluir que el Departamento tiene razón en que dicha sección permite que se consideren varios factores para decretar las cesantías, no obstante, los factores expresamente mencionados -el status de los empleados, su antigüedad y el tiempo en el servicio- no podían obviarse y tenían que tomarse en consideración. Por esa razón, OCAP al adoptar el Reglamento Núm. 2186 especificó el orden de prelación y cómo se iba a determinar dicho orden tomando en consideración los méritos, la antigüedad y el tiempo en el servicio de los empleados.

Por otro lado, el Art. 9, Sec. 9.3(1)(a) del Reglamento Núm. 2186 expresó que las agencias podían subdividirse por programas u oficinas regionales a los fines de identificar las jurisdicciones en las cuales habrían de decretarse las cesantías. Ahora bien, esto no significa que una agencia podía escoger realizar las cesantías por oficina regional o por la antigüedad de los empleados. Esta sección se tiene que analizar en conjunto con el resto del reglamento y las leyes

aplicables. De esta forma, al analizar las leyes aplicables a las cesantías del Departamento y las otras secciones del Reglamento Núm. 2186, podemos observar que para decretar las cesantías se tenían que tomar en consideración la antigüedad y el tiempo de servicio de los empleados. **Por lo tanto, a pesar de que las cesantías se podían llevar a cabo por centro, en cada centro se tenían que realizar según la antigüedad de los empleados.**

Así la cosas, la señora Vázquez Correa admitió que no se llevó a cabo el Plan de Cesantías y tampoco se tomó en consideración los años de servicios de los empleados, ya que las cesantías se hicieron por centro y no por la antigüedad de los empleados. Explicó que las cesantías se realizaron en dos etapas para que no se vieran afectados los servicios de salud. Además, arguyó que como eventualmente todos los hospitales iban a ser vendidos, era inadecuado realizar las cesantías por antigüedad y reubicar a los empleados en otros centros.

**Esta Curia ha expresado que aunque las agencias pueden cesantear a sus empleados, están obligadas a seguir los procedimientos y las normas establecidas en las leyes y reglamentos aplicables.[44] Además, las agencias tienen que seguir estrictamente los reglamentos que ellas mismas promulgaron, por lo tanto, no tienen discreción para decidir qué parte de los reglamentos**

---

[44] <u>Delgado v. DSCA</u>, 114 DPR 177, 181 (1983), citando a <u>Delbrey v. Municipio de Carolina</u>, 111 DPR 492, 496 (1981).

**llevar a cabo.** Así las cosas, aunque la Ley Núm. 187-1998 facultó al Departamento a establecer cambios organizacionales, como: modificar, abolir o suprimir un plan, expresó que no podía afectar o eliminar ningún programa establecido por ley sin el consentimiento de la Asamblea Legislativa. **Quiere decir que las disposiciones establecidas en la Ley Núm. 5 y en el Reglamento Núm. 2186 eran de cumplimiento mandatorio al implantar el Plan de Cesantías y la agencia estaba obligada a examinar y cumplir con lo allí establecido.** Por lo tanto, el Departamento venía obligado a desarrollar un Plan de Cesantías utilizando el criterio de antigüedad en el servicio como el factor determinante para decretar las cesantías. Además, según la Ley Núm. 31-1997, el Departamento estaba obligado a crear un registro especial con la información de los empleados que no fueron transferidos al privatizador para que fueran reubicados en el gobierno. No obstante y contrario a lo antes expuesto, el Departamento no siguió el criterio de antigüedad al realizar las cesantías y no presentó evidencia de que hubiese creado el registro especial.

Es importante aclarar que cuando la Asamblea Legislativa aprobó la Ley Núm. 31-1997, para enmendar la Ley Núm. 190-1996, ya el proceso de privatización de las instalaciones médico-hospitalarias del Estado había comenzado. Así, el legislador quiso enmendar el Art. 19

de la Ley Núm. 190-1997 para especificar que los derechos de los empleados cesanteados se garantizarían según lo dispuesto en la Ley Núm. 5, conociendo que esta ley establecía que al decretar las cesantías se tenía que considerar la antigüedad de los empleados. Si el legislador entendía que era inadecuado utilizar el criterio de la antigüedad de los empleados así lo hubiese expresado. Sin embargo, no lo hizo. **Así las cosas, no cabe duda que el Departamento incumplió con las disposiciones legales al llevar a cabo las cesantías, por lo tanto, las cesantías fueron ilegales.**

Por otro lado, el Departamento alegó que el foro apelativo erró al conceder la paga atrasada que los empleados cesanteados dejaron de percibir y la concesión de todos los beneficios marginales porque no surge del expediente cuáles de los empleados fueron reclutados por el privatizador o no aceptaron las ofertas de estos. No obstante, el Departamento levantó dicho argumento por primera vez ante el Tribunal de Apelaciones. Durante el proceso ante CASP, el Departamento tuvo a su disposición el mecanismo de descubrimiento de prueba en el cual pudo solicitar evidencia al respecto, mas no lo hizo. Inclusive, cuando los recurridos solicitaron que el caso se sometiera por el expediente el Departamento se allanó y estuvo de acuerdo con dicha solicitud. Tenemos que recordar que las partes no pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante los foros

apelativos.[45]  De ordinario un tribunal apelativo no entrará a evaluar argumentos que pudieron haber sido sometidos ante los foros inferiores por una parte apelante, pero no fueron presentados.[46]

A tenor de lo anterior, tanto CASP como el foro apelativo resolvieron correctamente al ordenar que el Departamento abonara la paga atrasada que los empleados cesanteados dejaron de percibir y la concesión de todos los beneficios marginales a los que hubiesen tenido derecho durante el periodo de cesantías. Asimismo, no erraron al restar los haberes percibidos en otros trabajos durante dicho periodo, según resolvimos en Hernández Badillo v. Municipio de Aguadilla, supra. En el caso antes mencionado, concluimos que "en aquellos casos en que un empleado público despedido ilegalmente haya recibido ingresos, por concepto de trabajos obtenidos y realizados durante el periodo que estuvo cesanteado, el patrono podrá deducir dichos ingresos de la cuantía a otorgarse por concepto de salarios dejados de percibir, independientemente de cuál es la fuente de donde provienen los mismos".[47]

---

[45] Const. Jose Carro v. Mun. Dorado, 186 DPR 113, 129 (2012), citando a J. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., San Juan, Pubs. J.T.S., 2011, T. III, pág. 1042; Vera v. Dr. Bravo, 161 DPR 308, 334 (2004).

[46] Ortiz Torres v. K & A Developers, Inc., 136 DPR 192, 202 (1994)

[47] Hernández Badillo v. Municipio de Aguadilla, 154 DPR 199, 209 (2001).

Ahora bien y como mencionáramos, el Tribunal de Apelaciones modificó la resolución de CASP y ordenó además la reinstalación de los empleados cesanteados a puestos análogos. No obstante, el foro intermedio erró en dicha determinación.

Aunque bien es cierto que la Ley Núm. 187-1998 facultó al Departamento a llevar a cabo cambios organizacionales internos, como transferir personal de AFASS al Departamento, se refería a los puestos compatibles que permanecerían en el Departamento. Como vimos, la Reforma se llevó a cabo con el propósito de mejorar los servicios de salud y brindarle a los ciudadanos acceso a cuidados médico-hospitalarios de calidad.[48] Así las cosas, el Gobierno se fue desvinculando de su rol tradicional de interventor en la prestación directa de servicios de salud.[49] Con la aprobación de la Ley Núm. 190-1996, el legislador permitió que **el Gobierno abandonara su función de proveedor de servicios para convertirse en agente fiscalizador, evaluador y regulador de los sistemas de salud.**[50] Por lo tanto, los puestos que brindaban prestación directa médico-hospitalaria pasaron a las entidades privadas que adquirieron los centros y el Departamento mantuvo puestos administrativos. Es por esta razón que al aprobarse la Ley Núm. 31-1997 el

[48] Véase Art. II de la Ley Núm. 72-1993.

[49] Véase Exposición de Motivos de la Ley Núm. 31-1997.

[50] Véase Exposición de Motivos de la Ley Núm. 190-1996.

legislador creó un registro interagencial para que los empleados cesanteados que no pasaran a trabajar con el privatizador fueran considerados en puestos similares en otras agencias o corporaciones públicas.

Por lo tanto, a pesar de que las cesantías fueron ilegales no procedía ordenar la reinstalación de los recurridos. Los recurridos solo tenían derecho a ser incluidos en el Plan de Reubicación para ser considerados en puestos similares en otras agencias o corporaciones públicas.

**IV**

Según los fundamentos expuestos, entiendo que no cabe duda de que en el caso de autos el Departamento podía cesantear a los recurridos, en virtud de la legislación promulgada para implantar la Reforma. Esta permitía la venta de las facilidades de salud y, como consecuencia, la cesantía de los empleados. Ahora bien, el Departamento tenía que dar estricto cumplimiento al procedimiento establecido por ley y reglamento, en protección del debido proceso de ley, incluyendo añadir a los recurridos en el Plan de Reubicación que se crearía para reubicar a los empleados cesanteados, que no fuesen reclutados por el privatizador, en otras áreas en el gobierno. Por lo tanto, procede como único remedio que el Departamento abone la paga atrasada que los empleados cesanteados dejaron de percibir, restando los haberes percibidos en otros trabajos durante dicho

periodo, y la concesión de todos los beneficios marginales a los que hubiesen tenido derecho durante el periodo de cesantías.

## V

En armonía con lo antes señalado, estoy conforme con la determinación de este Tribunal de modificar la sentencia del Tribunal de Apelaciones y ordenar al Departamento de Salud a abonar la paga atrasada que los empleados cesanteados dejaron de percibir, restando los haberes percibidos en otros trabajos durante dicho periodo, y la concesión de todos los beneficios marginales a los que hubiesen tenido derecho durante el periodo de cesantías.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Maggie Acevedo Sepúlveda
y otros

    Recurridos

       v.                          CC-2012-1050       Certiorari

Departamento de Salud

    Peticionario

Opinión de conformidad en parte y disidente en parte emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 28 de mayo de 2014.

Por entender que este Tribunal actuó correctamente al sostener la determinación de los foros recurridos en cuanto a que las cesantías efectuadas por el Departamento de Salud están revestidas de ilegalidad, estoy conforme. Empero, ante al curso de acción seguido, no me queda más que disentir y expresarme en torno a cuáles son los remedios que amparan a los empleados cesanteados en contravención a lo dispuesto en las normas aplicables a este caso, a saber: la derogada Ley de Personal del Servicio Público de Puerto Rico de 1975, *infra*, y el Reglamento Núm. 2186, conocido como el Reglamento de Personal: Áreas Esenciales al Principio Mérito.

Planteada la controversia en esos términos, procedemos a exponer el trasfondo fáctico que la suscita.

I

Para fines de la década de los años noventa, el Departamento de Salud (Departamento) dio paso a un proceso de privatización de las instituciones médico-hospitalarias del Gobierno de Puerto Rico como parte de la implantación de la Reforma de Salud. En vista de ello, ocurrieron un sinnúmero de cambios organizacionales, entre los que sobresale la desintegración del Departamento y la Administración de Facilidades y Servicios de la Salud (AFASS). Para ese entonces, la Sra. Maggie Acevedo Sepúlveda y otros empleados (cesanteados o recurridos) ocupaban puestos regulares de carrera en el Hospital Regional de Ponce y en el Centro Médico de Mayagüez. Como consecuencia del proceso de privatización, los recurridos fueron cesanteados de sus empleos.

Así las cosas, el 20 de julio de 2000, los cesanteados de ambos centros hospitalarios presentaron un recurso de apelación sobre impugnación de cesantías ante la entonces Junta de Apelaciones del Sistema de Administración de Personal (JASAP).[51] Los empleados del

---

[51] La Junta de Apelaciones del Sistema de Administración de Personal (JASAP) fue derogada en virtud de la Ley Núm. 184-2004, conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto

Hospital Regional de Ponce reclamaron que mediante cartas notificadas el 31 de mayo de 2000, la Dra. Carmen Feliciano Melecio, entonces Secretaria de Salud y Directora Ejecutiva de la AFASS, les notificó que sus cesantías serían efectivas al 30 de junio de 2000, en virtud de la legislación que privatizaba los centros de salud del Gobierno de Puerto Rico. Por su parte, los recurridos que ocupaban puestos en el Centro Médico de Mayagüez arguyeron que recibieron una carta de cesantía por medio de la cual se les indicaba que iban a quedar cesanteados a la fecha del 15 de octubre de 2000, al amparo de la ley que disolvía a la AFASS.

Ante el mencionado foro administrativo, los recurridos alegaron que el Departamento había efectuado el proceso de cesantías incumpliendo con lo dispuesto en la ley. En particular, arguyeron que las cesantías se realizaron sin considerar el criterio objetivo de tiempo en el servicio, sin otorgar adecuada publicación al Plan de Cesantías, sin ponerlo a disposición de los empleados y sin mencionarlo en las cartas de cesantías. Asimismo, alegaron que el Departamento no les permitió inspeccionar el orden de prelación para asegurarse de que la antigüedad y clasificación de sus correspondientes puestos era la correcta; que no se les

---

Rico. Se creó, entonces, la Comisión Apelativa del Sistema de Apelación de Recursos Humanos del Servicio Público (CASARH). Posteriormente, al amparo del Plan de Reorganización Núm. 2-2010, se suprimió la CASARH y se creó la Comisión Apelativa del Servicio Público (CASP).

orientó de forma adecuada sobre sus derechos y beneficios marginales; que no remitió las listas de los cesanteados a otras agencias del Gobierno; y que hubo selectividad en términos de los procesos de reubicación que se efectuaron, entre otras alegaciones.

Los cesanteados adujeron, también, que no existía tal Plan de Cesantías ni Registro de Antigüedad y Prelación. Por todo ello, solicitaron que se les reinstalara en sus puestos o, en la alternativa, que se les reubicara en puestos de similar jerarquía. De igual forma, reclamaron la nulidad de las cesantías y, como resultado, el pago de los salarios y haberes dejados de percibir durante ese período.

Luego de varios trámites procesales, el 1 de marzo de 2004, la JASAP determinó que las cesantías se habían realizado conforme a la legislación aplicable, por lo que denegó la apelación de los recurridos. En desacuerdo con esta determinación, los cesanteados presentaron un recurso de revisión judicial ante el Tribunal de Apelaciones. El 30 de junio de 2005, el foro apelativo revocó el dictamen de la JASAP y ordenó la celebración de una vista evidenciaria. El foro intermedio fundamentó su determinación en el argumento de que a los cesanteados se les menoscabó su derecho a ser oídos y a examinar y confrontar la prueba en su contra.

Conforme lo ordenado por el Tribunal de Apelaciones, la JASAP celebró la vista el 7 de julio de

2011. Durante ésta, se escuchó el testimonio de la señora Luz Vázquez Correa, quien declaró por parte del Departamento. En su testimonio, la señora Vázquez Correa alegó que la AFASS preparó un listado, que incluía el nombre y otros datos de los empleados, y lo entregó en la oficina de Recursos Humanos de las diferentes regiones. Esto, con el propósito de que los empleados de Recursos Humanos fueran quienes verificaran la información con el empleado en cada región. La señora Vázquez Correa adujo, además, que se creó un banco de talentos y que no se siguió el Plan de Cesantías que existía en el Departamento. Así pues, declaró que las cesantías se efectuaron de acuerdo al orden de la venta de los hospitales, eludiendo así utilizar el criterio de antigüedad de los empleados. Por su parte, como prueba de refutación, los recurridos impugnaron lo testificado por parte de la señora Vázquez Correa mediante la presentación de varios testigos.

Así las cosas, el 14 de diciembre de 2011, la Comisión Apelativa del Servicio Público (CASP) declaró ha lugar la apelación de los recurridos, con excepción del reclamo de la Sra. Zenaida Rodríguez Cardona, ya que la evidencia demostró que ésta había rechazado una oferta de empleo ofrecida por el privatizador. En su dictamen, el foro administrativo concluyó que el proceso de cesantías fue efectuado de manera ilegal. Por ello, ordenó la reinstalación de los cesanteados junto con el

abono de la paga atrasada dejada de percibir y la concesión de todos los beneficios marginales a los que los recurridos tuviesen derecho en virtud del período de cesantía ilegal. A su vez, determinó que al pago de los salarios dejados de percibir se le debía de aplicar la normativa jurisprudencial establecida en Hernández v. Mun. de Aguadilla, 154 DPR 199 (2001).

No conformes con la Resolución emitida por la CASP, tanto el Departamento como la señora Rodríguez Cardona solicitaron, por separado, reconsideración ante ese foro. De esta forma, el 8 de febrero de 2012, la CASP modificó su dictamen dejando sin efecto la orden de reinstalar a los cesanteados. Es decir, dicho foro solo mantuvo como remedio el pago de los ingresos dejados de percibir y los beneficios marginales a los que hubiesen tenido derecho durante el tiempo de la cesantía ilegal; esto, con la reducción de los haberes percibidos en otros trabajos conforme a nuestros pronunciamientos anteriores. Por su parte, la solicitud de reconsideración presentada por Rodríguez Cardona fue denegada.

Inconformes con el proceder de la CASP, todas las partes presentaron recurso de revisión administrativa ante el Tribunal de Apelaciones. Luego de consolidados los casos y de otros trámites procesales, el 30 de octubre de 2012, el foro apelativo intermedio emitió una Sentencia mediante la cual modificó la Resolución de la

CASP a los únicos efectos de ordenar la reinstalación de los empleados cesanteados. En desacuerdo con tal determinación, el Departamento recurre ante este Tribunal mediante el recurso de *certiorari* y señala la comisión de los siguientes errores:

> Erró el Tribunal de Apelaciones al determinar que la conclusión de la CASP de que las cesantías fueron ilegales surgió de la evidencia sustancial que obra en el expediente, analizada a la luz de las disposiciones legales y reglamentarias que no se siguieron por Salud.
>
> Erró el Tribunal de Apelaciones al confirmar el remedio del pago de los haberes dejados de percibir a casi todos los apelantes aunque no existe evidencia en el expediente administrativo respecto a cuáles de ellos fueron reclutados por la privatizadora adquiriente o no aceptaron el trabajo ofrecido por esta.
>
> Erró el Tribunal de Apelaciones al modificar la resolución recurrida para añadir la reinstalación a los empleados cesanteados a otras unidades o facilidades de Salud.

Ante el cuadro fáctico expuesto, esta Curia identifica correctamente la ilegalidad que caracterizó las cesantías efectuadas por el Departamento. Ahora bien, lamentable e inexplicablemente concede a los que fueron objeto de las actuaciones ilícitas del Departamento **solo una parte** de los remedios que la derogada Ley Núm. 5 de 14 de octubre de 1975 (Ley Núm. 5 o Ley de Personal),[52] confería a los empleados y que

---

[52] Ley de Personal del Servicio Público de Puerto Rico, 3 LPRA sec. 1301 *et seq.*

reiteradamente reconoció este Tribunal durante su vigencia.

## II

Para lograr la implantación de la Reforma de Salud, se aprobó legislación encaminada a privatizar los servicios de salud ofrecidos por el Estado. El proceso de privatización de las instituciones médico-hospitalarias tenía como objetivo la creación de un seguro de salud para la población médico-indigente de Puerto Rico. Para alcanzar ese propósito, se comenzó la venta gradual y el traspaso de las instalaciones médicas pertenecientes al Departamento a entidades privadas.

Conjuntamente con el proceso de privatización de las instalaciones de salud públicas, se reconocieron unos derechos y se abrió paso a procesos de reubicación de los empleados que laboraban en las dependencias médico-hospitalarias adscritas al Departamento. Para atender estas circunstancias, el Art. 19 de la Ley Núm. 190-1996 establecía el procedimiento a seguir en cuanto a los empleados que laboraban en la instalación pública al momento de concretarse la privatización y que no pasaran a ser empleados de la entidad contratante. Con respecto a estos empleados, dicho artículo disponía que "se les garantizará sus derechos a tono con lo dispuesto en el inciso (d), Artículo 6 de la Ley Núm. 5 de 6 de abril de 1993, conocida como la 'Ley de Reorganización

Ejecutiva de 1993'".[53] El referido Art. 6 limitaba los planes de reorganización del Gobierno disponiendo, en lo pertinente, que ninguna reorganización tendría el efecto de "[a]fectar el empleo, derechos y permanencia de los empleados de la agencia o la agencias reorganizadas, incluyendo los derechos dentro del sistema de pensión, retiro o ahorros".[54]

No obstante, la Ley Núm. 31-1997 (Ley Núm. 31), enmendó el Art. 19 de la Ley Núm. 190. La enmienda tuvo el efecto de aclarar que, con respecto a aquellos empleados del Departamento que estuvieran trabajando en alguna de sus instituciones al momento de la privatización y que no fueran contratados por la entidad privada, "el Departamento velará por el cumplimiento de las **disposiciones de la Ley Núm. 5 de 14 de octubre de 1975, según enmendada**, y otras leyes y reglamentos aplicables".[55] Es decir, por medio de esta enmienda se descartó dirigirse a la Ley Núm. 5-1993, siendo la Ley de Personal el estatuto rector al que hay que acudir en la búsqueda de los remedios que hoy nos ocupan.

**III**

Conforme al mandato expreso del legislador, el marco legal por medio del cual se regiría la dinámica y

---

[53]Art. 19 de la Ley Núm. 190-1996.
[54]Art. 6 de la Ley Núm. 5-1993, conocida como la Ley de Reorganización Ejecutiva de 1993.

[55]Sec. 15 de la Ley Núm. 31-1997. (Énfasis suplido).

las decisiones con respecto al personal del Departamento era la Ley Núm. 5. Ante esa realidad, resulta imperativo examinar las disposiciones correspondientes de este estatuto. Veamos.

En lo pertinente al asunto que nos atañe, la Ley Núm. 5 incluía entre sus disposiciones consideraciones respecto a las cesantías de los empleados públicos. Particularmente, en su Sec. 4.6, inciso 6, se establecían las circunstancias particulares en las que se podían decretar las cesantías, a saber:

> (6) Se podrán decretar cesantías en el servicio sin que esto se entienda como destitución, en los siguientes casos:
>
> (a) Debido a la **eliminación de puestos por falta de trabajo** o de fondos, o
> . . .
> En la situación descrita en la cláusula (a) de este inciso la separación del servicio se hará según se establezca mediante reglamento al respecto en el que se **tome en consideración entre otros factores el status de los empleados y su antigüedad y el tiempo en servicio.**[56]

Por su parte, la Sec. 5.18(1), la cual regulaba lo referente a los **reingresos**, disponía que aquellos empleados que fueran cesanteados como consecuencia de la eliminación de sus puestos "tendrán derecho a que sus nombres se incluyan en el registro de elegibles correspondientes a las clases de puestos que ocupaban con carácter regular u otras similares que envuelvan el

---

[56]Sec. 4.6(6) de la Ley Núm. 5-1975 (3 LPRA sec. 1336). (Énfasis suplido).

mismo nivel de trabajo".[57] Asimismo, la Ley Núm. 5 también contaba con órdenes remediales para cuando se vieran afectados los derechos de los empleados que hubiesen sido ilegalmente despedidos. En particular, en la Sec. 7.17 se establecía, entre otros aspectos, que:

> (1) En los casos en que la Junta resuelva a favor del querellante, dictará las órdenes remediales pertinentes.
>
> (2) En casos de destitución, si la decisión de la Junta es favorable al empleado, ésta deberá **ordenar su restitución** a su puesto, o a un puesto similar. Asimismo deberá ordenar **el pago total o parcial de los salarios dejados de percibir por éste desde la fecha de la efectividad de la destitución, y la concesión de todos los beneficios marginales a que éste hubiese tenido derecho.**[58]

En conformidad con los propósitos de la Ley Núm. 5, se aprobó el Reglamento Núm. 2186, conocido como Reglamento de Personal: Áreas Esenciales al Principio de Mérito (Reglamento de Personal o Reglamento). Dicho Reglamento tuvo el propósito de dar cumplimiento al mandato legal. En su Preámbulo se recogía el objetivo de este Reglamento al expresarse que el mismo "instrumenta adecuadamente la nueva ley. Es una defensa, un resguardo al principio de mérito con las disposiciones necesarias para hacerlo efectivo. No es de aplicación teórica y abstracta sino concreta y real".[59]

---

[57]Sec. 5.18(1) de la Ley Núm. 5-1975 (3 LPRA sec. 1358).

[58]Sec. 7.17(1) y (2) de la Ley Núm. 5-1975 (3 LPRA sec. 1397). (Énfasis suplido).

[59]Preámbulo del Reglamento de Personal: Áreas Esenciales al Principio de Mérito, Reglamento Núm. 2186.

En lo que concierne a la controversia ante este Tribunal, el Art. 9, Sec. 9.3, del Reglamento, disponía todo lo concerniente al asunto de las cesantías. En particular, la Sec. 9.3(1) permitía separar del servicio a cualquier empleado cuando se eliminaran puestos debido a la falta de trabajo o fondos. Ahora bien, el Reglamento establecía la forma en que se debía proceder con las cesantías. Así pues, era deber de la autoridad nominadora establecer un método a los efectos de decretar las cesantías. Una vez fuera adoptado el método a seguirse para decretar las cesantías, era requisito que la autoridad nominadora lo notificara a los empleados.[60]

En cuanto al orden en que debían efectuarse las cesantías, el Reglamento estableció el siguiente: en primer lugar, serían separados los empleados transitorios; en segundo lugar, lo empleados probatorios; y en último término, aquellos empleados clasificados como regulares.[61] Además de estas normas, en el Reglamento se desglosaban las guías para determinar el orden de prelación en que se decretarían las cesantías. En ese orden de prelación era imperativo tomar en consideración el desempeño de las funciones y el tiempo en el servicio. A tenor con la Sec. 9.3(1)(c),

---

[60]Sec. 9.3(1)(a) del Reglamento de Personal: Áreas Esenciales al Principio de Mérito, Reglamento Núm. 2186.

[61]Sec. 9.3(1)(b) del Reglamento de Personal: Áreas Esenciales al Principio de Mérito, Reglamento Núm. 2186.

era requerido que la autoridad nominadora notificara por escrito a todo empleado que iba a ser cesanteado con no menos de treinta días de antelación a la fecha en que habría de quedar cesanteado. Finalmente, el Reglamento dejaba claro que ninguna cesantía iba resultar efectiva a menos que se cumpliera con el mencionado requisito de notificación.[62]

**IV**

Debemos señalar que se pierde el norte al aducir que este Tribunal nunca ha definido los conceptos de "cesantía" y "destitución". Ello no ha sido impedimento en el pasado, ni lo es en el presente, para reconocer la procedencia de mantener los remedios obtenidos por los empleados cesanteados ilegalmente. Por tanto, no podemos avalar el razonamiento de disponer de la controversia a base de interpretaciones semánticas o analogías que no encuentran apoyo en la legislación aplicable a la controversia ante nos. De hecho, a poco se examine el historial legislativo del estatuto aplicable, tampoco encuentra validez sostener una diferencia entre estos dos conceptos. Es por ello que ante cesantías ilegales, este Tribunal no había titubeado, ni enfrentado impedimento alguno, en conceder *todos* los remedios provistos en la Sec. 7.17 de la Ley Núm. 5, entre los cuales se incluye la **reinstalación** en primer término.

---

[62]Sec. 9.3(1)(c) del Reglamento de Personal: Áreas Esenciales al Principio de Mérito, Reglamento Núm. 2186.

Examinemos, entonces, nuestros pronunciamientos previos sobre el particular.

En Delbrey v. Mun. de Carolina, 111 DPR 492 (1981), empleados regulares del municipio de Carolina quedaron cesanteados debido a que sus puestos habían sido eliminados por alegada duplicación en las funciones que desempeñaban o por no existir trabajo suficiente para la ejecución de tales funciones. Inconformes con el proceder del municipio, los cesanteados apelaron ante la JASAP alegando que sus despidos incumplieron con las disposiciones de la Ley Núm. 5. El foro administrativo convalidó las cesantías y, oportunamente, el Tribunal de Primera Instancia confirmó dicho dictamen. Ante ese cuadro, decidimos expedir el recurso.

Analizada la controversia a la luz de la Ley Núm. 5 y el Reglamento de Personal, este Tribunal concluyó que el municipio de Carolina no cumplió con las normas y procedimientos allí dispuestos. En consecuencia, decretamos que las cesantías de los empleados eran nulas. Ante tal escenario, ordenamos **la restitución** de los empleados cesanteados.

En Pizarro v. Mun. de Carolina, 112 DPR 822 (1982), decenas de obreros fueron cesanteados por el municipio. Los obreros trabajaban en calidad de jornaleros desempeñándose en labores de mantenimiento y limpieza de carreteras, mecánica, operación de equipo pesado, entre otras. El municipio alegó que las cesantías se debieron

a la precaria situación económica que estaba atravesando y al consiguiente sobregiro en términos del aumento de la partida presupuestaria destinada al pago de los jornales.

El foro de instancia determinó que el municipio siguió los criterios de necesidad de servicio y la eficiencia de los empleados en la preparación de la lista de los empleados que habrían de quedar cesanteados. De igual forma, estableció que los jornaleros eran empleados irregulares que de acuerdo a la antigua Ley Municipal podían ser cesanteados sin formulación de cargos o sin que hubiese justa causa para ello. Estimó, además, que los despidos eran legales por razón de la difícil situación económica que sufría el municipio. Inconformes con los pronunciamientos del foro primario, los cesanteados acudieron ante este Tribunal.

Luego de resolver que los jornaleros cesanteados eran empleados públicos cobijados por la Ley Núm. 5, procedimos a examinar si el municipio les había quebrantado los derechos concedidos por la mencionada ley y por el Reglamento de Personal. Determinamos, entonces, que los empleados no podían ser cesanteados en ausencia de un plan de cesantías que considerara la eficiencia y tiempo en el servicio público. Por encontrarnos ante una situación de política pública general, debemos reproducir nuestras expresiones de

aquel entonces las cuales llevaban el razonamiento jurídico siguiente:

> Independientemente de cuán justificadas pudieran haber estado unas cesantías desde el punto de vista económico, la política pública a favor de la implementación del sistema de mérito exige que haya constancia de que al eliminarse uno o más puestos en una clase se dejarán cesantes y serán retenidas las personas indicadas de acuerdo con los criterios objetivos que el sistema de mérito encarna. Es igualmente vital que todos los empleados públicos posean conocimiento previo del método a seguirse para que puedan defender adecuadamente sus derechos, los cuales son relativos a los derechos de los demás. La ausencia de constancia clara, objetiva y difundida de los criterios para determinar quiénes habrán de quedar cesantes crea inseguridades y siembra dudas no sólo sobre la legitimidad de cada cesantía particular, sino sobre la validez y necesidad de la decisión de decretar cesantías en general. Ello, a su vez, fomenta la profusión de pleitos y causa erosión y disgusto entre los empleados y es contrario a los objetivos de la Asamblea Legislativa en lograr la mayor uniformidad, justicia, equidad, armonía, satisfacción y continuidad, y regularidad de los servicios públicos posibles. Íd., págs. 829-830.

Finalmente, nuestro análisis nos llevó a concluir que las cesantías fueron decretadas eludiendo los parámetros establecidos. En consecuencia, determinamos que los cesanteados tenían derecho a ser **reempleados** y recibir la paga dejada de percibir con los descuentos autorizados en ley.

También tuvimos la oportunidad de expresamos en Navedo v. Mun. de Barceloneta, 113 DPR 421 (1982), en torno a cuáles son los remedios que protegían a los

empleados cuando se efectuaban cesantías ilegales. En este caso, los peticionarios fueron despedidos sumariamente por el alcalde del municipio de Barceloneta. Oportunamente, apelaron los despidos ante la JASAP, pero ese foro se negó a asumir jurisdicción para entender en la apelación interpuesta. El Tribunal de Primera Instancia confirmó la actuación de la JASAP por entender erróneamente que la Ley Núm. 75 no era de aplicación a los empleados irregulares.

En el citado caso reiteramos que los empleados irregulares estaban protegidos por la mencionada ley. Así pues, determinamos que los despidos efectuados por el alcalde requerían la adopción de un plan de cesantías y que dicho plan debía notificarse a los empleados y a los que iban a ser cesanteados. Al no observarse ninguno de estos requisitos, decretamos que las cesantías habían sido nulas y que, por tanto, procedía que los empleados fueran **restituidos** en sus puestos con los beneficios estatuidos en la Ley Núm. 5. En aquel entonces resolvimos la controversia mediante la siguiente expresión: "[s]e dictará sentencia en que se revoque la del Tribunal Superior y **se ordene la reinstalación de los empleados recurrentes con los beneficios establecidos en la Sec. 7.17 de la Ley de Personal del Servicio Público**". Íd., pág. 424. (Énfasis Suplido).

Luego, en Estrella v. Mun. de Luquillo, 113 DPR 617 (1982), acordamos revisar una sentencia del foro

primario por medio de la cual se ordenaba la **reposición** de ciertos empleados despedidos por el municipio en sus puestos originales. Con mayor peso para sustentar nuestro disenso, debemos señalar que el asunto de la reposición de los empleados *ni siquiera fue cuestionado* por el municipio.

Por su parte, la controversia en el caso <u>Olivieri Morales v. Pierluisi</u>, 113 DPR 790 (1983), se originó cuando el entonces Secretario de la Vivienda notificó a los recurrentes, todos empleados de carrera, que quedarían cesantes de sus puestos debido a la precaria situación económica de la entonces Corporación de Renovación Urbana y Vivienda (CRUV). Inconformes, los cesanteados presentaron un recurso de *injunction* y solicitaron la reposición a sus respectivos puestos, junto con la paga y beneficios atrasados y compensación por daños. Entre otras cosas, alegaron que la autoridad nominadora no agotó todos los remedios disponibles antes de cesantearlos, tales como ofrecerles descensos o traslados interagenciales. Además, adujeron que no se les notificó el plan de cesantías adoptado, según lo exige la legislación pertinente. El Tribunal de Primera Instancia dictó sentencia declarando no ha lugar la demanda de los cesanteados. Enmarcada la controversia principal bajo el incumplimiento con las disposiciones de la Ley Núm. 5, acordamos revisar.

Luego de analizar la reglamentación aplicable, determinamos que era meritoria la contención de los cesanteados de que se les infringió el debido proceso al incumplir con la notificación que exige la Sec. 9.3(1)(a) del Reglamento de Personal, la cual establecía que el método que se adoptara para decretar las cesantías se tenía que poner en conocimiento de los empleados. La agencia estaba obligada a cumplir rigurosamente con ese trámite. Además, en aquella ocasión concluimos que la agencia tampoco observó el mandato legislativo de adoptar un reglamento por medio del cual se diera fiel cumplimiento al principio de mérito al momento de decretar cesantías. En vista de ello, modificamos la sentencia del TPI a los fines de declarar con lugar la demanda de los cesanteados y ordenamos a los demandados a **reponerlos** como empleados de carrera en el Departamento de Vivienda y en la CRUV, con los sueldos correspondientes. Asimismo, ordenamos el pago de los haberes dejados de percibir durante el tiempo de la cesantía ilegal, con los descuentos pertinentes establecidos para aquel entonces. Íd., págs. 800-801.

En el 2001, este Tribunal se enfrentó en Hernández v. Mun. de Aguadilla, *supra*, a una controversia muy similar al caso ante nuestra consideración. El caso tuvo su génesis cuando empleados regulares fueron cesanteados de sus puestos en los Centros de Diagnóstico y

Tratamiento del municipio de Aguadilla. Se alegó que el motivo para decretar las cesantías fue que los centros habían perdido su utilidad a raíz de la implantación de la Reforma de Salud. En desacuerdo con la actuación del municipio, los empleados presentaron recurso de apelación ante la JASAP, impugnado la determinación de cesantearlos de las posiciones que ocupaban. En su apelación, los cesanteados alegaron, entre otros asuntos, que: 1) el municipio había incidido al no implantar un Plan de Cesantías conforme a derecho; 2) que no existían fundamentos para decretar las cesantías; 3) que el municipio había contratado varios empleados que realizaban labores afines a las que ellos realizaban; y 4) que el presupuesto municipal había tenido un incremento sustancial. Íd., pág. 201. El municipio negó todas las alegaciones y sostuvo que el criterio utilizado para decretar las cesantías fue la antigüedad de los empleados.

La JASAP declaró con lugar la apelación de los cesanteados, ordenando así su **reinstalación** y el pago de los haberes dejados de percibir. Oportunamente, el municipio presentó moción de reconsideración, la cual fue declarada no ha lugar. Inconforme con ese dictamen, el municipio acudió ante el antiguo Tribunal de Circuito de Apelaciones alegando que la JASAP había errado al no ordenar el descuento de todos los salarios percibidos, independientemente de su procedencia, y al no determinar

que varios de los cesanteados no tenían derecho a la reinstalación. El foro apelativo modificó lo dispuesto por la JASAP a los únicos efectos de autorizar al municipio a descontar todos los haberes y sueldos devengados durante el periodo en que los empleados estuvieron cesanteados, provenientes de labores realizadas en el Gobierno, así como también los salarios devengados en la empresa privada.

Del dictamen del foro intermedio se concluye que la orden de reinstalación de los empleados emitida por la JASAP no fue alterada. Así las cosas, los cesanteados acudieron ante este Tribunal señalando como *único* error el que el foro apelativo ordenara descontar de los salarios y beneficios que debía pagarles el municipio, cualquier cantidad de dinero devengada por trabajo realizado en la empresa privada durante el periodo de cesantía ilegal. Por tanto, el asunto de la reinstalación nunca estuvo cuestionado ante este Tribunal.

Luego de analizar el propósito legislativo de la Ley Núm. 5 y examinar las disposiciones de su Sec. 7.17, confirmamos la decisión del antiguo Tribunal de Circuito de Apelaciones y emitimos los siguientes pronunciamientos, a saber:

> En síntesis, los remedios provistos por la Sec. 7.17 de la Ley de Personal del Servicio Público, ante, son de naturaleza **reparadora** o **remedial.** En forma alguna dicha medida pretende "castigar" al "patrono" por la actuación ilegal. Por el contrario, **la acción**

**afirmativa va dirigida a restituir al empleado afectado a la misma posición que ocuparía de no haberse incurrido en la conducta ilegal.**

A tenor con esta interpretación, concluimos que en aquellos casos en que un empleado público despedido ilegalmente haya recibido ingresos, por concepto de trabajos obtenidos y realizados durante el periodo que estuvo cesanteado, el patrono podrá deducir dichos ingresos de la cuantía a otorgarse por concepto de salarios dejados de percibir, independientemente de cuál es la fuente de donde provienen los mismos. Íd., págs. 208-209. (Énfasis Suplido).

Los pronunciamientos jurisprudenciales expuestos fundamentan nuestro disenso y, a su vez, nos permiten reiterar nuestra oposición a refrendar una formulación teórica que intenta discernir entre cesantías y destituciones al amparo de leyes o reglamentos cuya aprobación fue posterior a los hechos ante nos o que en nada se vinculan con el propósito legislativo de la Ley Núm. 5. No hay duda con respecto a cuál era la ley aplicable al momento de suscitarse la controversia que nos ocupa. Recordemos, entonces, que es un principio cardinal de hermenéutica el que los tribunales siempre consideren cuáles fueron los principios perseguidos por la Asamblea Legislativa al interpretar una disposición específica de una ley. Irizarry v. J & J Cons. Prods. Co., Inc., 150 DPR 155, 163 (2000). En mérito de lo anterior, es obligación fundamental de los tribunales imprimirle efectividad a la intención legislativa, propiciando la realización del propósito que persigue la ley.

**V**

Al amparo del marco estatutario y jurisprudencial antes expuesto, procedemos a resolver la controversia que suscita el presente caso. Para disponer de la misma, debemos evaluar si el Departamento de Salud cumplió con la reglamentación aplicable al momento de efectuar las cesantías. De concluir que las mismas fueron ilegales, nos corresponde determinar cuáles son los remedios que cobijan a los empleados cesanteados.

Como expusimos, durante la década de los años noventa, el Departamento comenzó un proceso de privatización de las instalaciones médico-hospitalarias pertenecientes al Estado. Como consecuencia, se cesantearon empleados públicos que laboraban tanto con el Departamento como con la AFASS. Así las cosas, los recurridos fueron cesanteados de sus empleos durante el año 2000.

Al decretar las cesantías, el Departamento venía obligado a cumplir con la legislación vigente. Es decir, para que éstas no estuvieran revestidas de ilegalidad, el Departamento debía de ceñirse por lo dispuesto en la Ley Núm. 5 y el Reglamento de Personal, entre otra legislación. Recordemos que la Ley Núm. 31 de 1997, enmendó el Art. 19 de la Ley Núm. 190-1996, a los efectos de establecer que el Departamento debía cumplir con la Ley Núm. 5 en los casos de empleados cesanteados

durante el proceso de privatización que no fueran contratados por la entidad privada.

Así pues, conforme a la Sec. 4.6 de la Ley Núm. 5, para decretar cesantías era imperativo tomar en consideración el estatus de los empleados, su antigüedad y el tiempo en el servicio. De igual forma, la ley establecía que los cesanteados tenían derecho a que sus nombres se incluyeran en un registro de elegibles con respecto a los puestos que ocupaban u otros similares. Además de darle estricto cumplimiento a lo dispuesto en la mencionada ley, no podía ignorarse lo promulgado en el Reglamento de Personal. Dicho Reglamento dejaba claro que la autoridad nominadora tenía el deber de adoptar un método para decretar las cesantías y, sobre todo, que era requisito que ese método se notificara a los empleados. El Reglamento también determinaba que las cesantías de los empleados debían de efectuarse según un orden de prelación en el cual era necesario tomar en consideración el desempeño de las funciones y el tiempo en el servicio. A su vez, la Ley Núm. 31, en su Sec. 26, imponía que aquellos empleados que no fueran contratados por el privatizador se incluyeran en un plan de reubicación.

En su comparecencia, el Departamento aduce que cumplió con la normativa vigente al momento de decretar las cesantías. La razón no está de su lado. Si bien sostenemos que el Departamento estaba facultado para

cesantear a los empleados de sus respectivos puestos, en virtud de la legislación por medio de la cual se cimentó la Reforma de Salud, dicha agencia no tenía autoridad para anular lo dispuesto en la ley y reglamentación. Luego de examinar la comparecencia de las partes, no albergamos dudas de que el proceso de cesantías se llevó a cabo de forma ilegal. Los hechos nos permiten colegir que el Departamento incumplió tanto con las disposiciones de la Ley Núm. 5 como con lo establecido en el Reglamento Núm. 2186.

Así las cosas, en conformidad con el criterio de este Tribunal, refrendamos la determinación del Tribunal de Apelaciones y de la CASP, reiterando con ello que el proceso de cesantías promovido por el Departamento lleva el estigma de la ilegalidad. Por tanto, no podemos avalar ni tolerar el proceder del Departamento. Ello, pues, trastoca los derechos de la clase trabajadora. Concluimos, al igual que lo reconoce esta Curia, que no se cometió el primer error señalado. La evidencia sustancial que obra en el expediente muestra, a todas luces, que las cesantías fueron ilegales.

Ahora bien, ante la realidad de que las cesantías fueron ilegales, procede que este Tribunal conceda la totalidad de los remedios, contemplados en la legislación aplicable, a los perjudicados por las acciones ilegales del Departamento. Nuevamente, a tenor con el mandato de la Ley Núm. 31, que enmendó el Art. 19

de la Ley Núm. 190, debemos acudir a las disposiciones de la Ley Núm. 5. Corresponde dirigirnos a lo promulgado en esta última ley y aplicar los remedios que se conceden en caso de incurrir en cesantías ilegales.

Al examinar el mencionado estatuto y su jurisprudencia interpretativa, nos enfrentamos ante la innegable realidad de que consecuentemente hemos reconocido que procede ordenar la restitución al puesto o a un puesto similar, cuando nos topamos con una cesantía ilegal. Asimismo, procede ordenar el pago de los salarios dejados de percibir por el empleado, desde la fecha de la efectividad de la destitución, y la concesión de todos los beneficios marginales a que este hubiese tenido derecho.

Al determinar la ilegalidad de las cesantías, el Tribunal de Apelaciones resolvió conforme a nuestros pronunciamientos jurisprudenciales y concedió a los empleados cesanteados la totalidad de los remedios que el legislador expresamente dispuso en el estatuto aplicable. Es decir, ordenó la reinstalación de los empleados, el pago de los salarios dejados de percibir por el empleado durante el periodo de la cesantía ilegal y la concesión de todos los beneficios a los cuales tenía derecho. El foro intermedio no erró al conceder estos remedios. Entendemos que los cesanteados son acreedores de los mismos; esto, como consecuencia de las actuaciones ilícitas incurridas por el Departamento.

Resolvemos que el Tribunal de Apelaciones no incurrió en el tercer error señalado. Por consiguiente, los recurridos tienen **derecho a ser reinstalados** en sus puestos o en puestos análogos en la eventualidad de que sus puestos dejaran de existir por motivo de la privatización de las facilidades de salud.

Esta realidad jurídica no puede ser derrotada por consideraciones de política pública basadas en que la aprobación de la Ley Núm. 190 significó que el Departamento de Salud abandonó totalmente su función tradicional de proveedor de servicios, para convertirse únicamente en agente fiscalizador, evaluador y regulador de los sistemas de salud. De hecho, esa premisa no es correcta. Basta con tomar conocimiento para percatarse que el Departamento de Salud cuenta con un sinnúmero de unidades operacionales[63] que trascienden la función única de fiscalización que se pretendió promover bajo la Ley Núm. 190. Recordemos que al amparo de la ley que derogó a la AFASS se le dio al Departamento la facultad de realizar cambios organizacionales internos para que, entre otras acciones, pudiera consolidar las facultades

---

[63]Las unidades operacionales que se desglosan en la página electrónica oficial del Departamento de Salud son las siguientes: Centro para víctimas de violación, Comisión de alimentación y nutrición de Puerto Rico, Comisión para la prevención del suicidio, División de prevención de enfermedades de transmisión sexual, Oficina de preparación y coordinación de respuesta en salud pública, Programa madres, niños y adolescentes, Laboratorio de salud pública, Oficina de epidemiología, Programa de tuberculosis, Programa de vacunación, Oficina de salud primaria, Programa WIC, y Proyecto asma de Puerto Rico, entre otras.

y obligaciones de la AFASS, crear nuevas unidades organizacionales y **transferir personal** de la AFASS al Departamento. Por tanto, no nos persuade el argumento del Departamento de que eliminada la AFASS, ya no existe posibilidad alguna de transferencias.

Así las cosas, en reconocimiento de los remedios que por derecho les corresponden, reiteramos que procede la reinstalación de los cesanteados ilegalmente. Entendemos que el Departamento de Salud cuenta con facilidades y unidades para reinstalar a los mismos. En consecuencia, los cesanteados pueden ser reubicados en alguna de las unidades operacionales que en la actualidad posee el Departamento de Salud. Independientemente de ello, este es el remedio que expresamente el legislador contempló, unido al pago de los salarios dejados de percibir y la concesión de todos los beneficios marginales.

La determinación de conceder la reinstalación a los cesanteados se fundamenta, además, en nuestros pronunciamientos previos. Conforme a lo discutido, esta Curia ha actuado con anterioridad ante el asunto de cesantías ilegales, concediendo la reinstalación como parte de los remedios. Basta con examinar nuestro proceder ante controversias similares para percatarnos que la orden de reinstalación siempre ha estado presente como parte de los remedios concedidos. Nuestros pronunciamientos más recientes afirman que los remedios

provistos por la Sec. 7.17 son de naturaleza reparadora o remedial y van dirigidos a "**restituir al empleado afectado a la misma posición que ocuparía de no haberse incurrido en la conducta ilegal**". *Véase* <u>Hernández v. Mun. de Aguadilla</u>, *supra*, pág. 209. (Énfasis suplido).

Nuestra determinación de conceder la totalidad de los remedios provistos en la Sec. 7.17 también encuentra apoyo en los principios cardinales de hermenéutica antes expuestos y analizados a la luz del propósito legislativo de la Ley Núm. 5. Ante este escenario, reiteramos que es menester dirigirnos al historial legislativo de la Ley Núm. 5 para percatarnos de que el legislador no definió, distinguió ni estableció la diferencia entre "cesantías" y destituciones". Tampoco el legislador incluyó una disposición o enmienda que estableciera que por medio de una ley posterior se podrían definir estos conceptos y precisar la diferencia entre los mismos. No podemos apoyar el argumento de una supuesta "enmienda tácita" a la Ley Núm. 5, provocada por una ley aprobada 29 años más tarde, para sustentar una diferencia entre cesantías y destituciones que no existía al momento de suscitarse los hechos ante nuestra consideración.

Sin duda, una interpretación semántica e intento de analogía entre los aludidos dos conceptos daría al traste con el reconocimiento que consecuentemente este Tribunal ha realizado referente al derecho de

reinstalación de un empleado cesanteado ilegalmente. No puedo avalar el contrasentido de que un empleado al que se le formulen cargos disciplinarios se encuentre en una mejor posición que un empleado cesanteado, al momento de que ambos prevalezcan ante los tribunales por ser inválida la acción tomada por la acción nominadora. En otras palabras, el despido ilegal es el tronco del árbol que puede contener la rama de la cesantía ilícita o la rama de la destitución ilegal. La Ley Núm. 5 tiene el remedio para cortar de raíz el fruto del despido ilegal, ya sea por la semilla de una cesantía o por la semilla de una destitución inválida. En ambos casos, la mencionada ley provee el remedio de la restitución como consecuencia del despido ilegal.

De igual forma, mucho menos puedo apoyar el echar por la borda todos los precedentes discutidos en esta Opinión. Cónsono con lo anterior, entendemos que en el caso ante nuestra consideración debe prevalecer el propósito legislativo.

**VI**

Por otra parte, aunque estamos conformes con que se le ordene al Departamento el pago de los haberes dejados de percibir y la concesión de todos los beneficios a los que los cesanteados tienen derecho, no compartimos el criterio de que a esa cuantía se le deben deducir *todos* los salarios por trabajos obtenidos y realizados durante el periodo de cesantía ilegal, conforme lo establecido

en <u>Hernández v. Mun. de Aguadilla</u>, *supra*. Nos explicamos.

Resulta claro que no actuaremos contra la prohibición consagrada en el Art. VI, Sec. 10, de nuestra Constitución que impide que una misma persona ocupe al mismo tiempo dos cargos o empleos en el gobierno y reciba dos sueldos en virtud de esos cargos o empleos. Es decir, estamos conformes con que se deduzca del pago de la sentencia de los empleados públicos cesanteados los salarios devengados en otros trabajos provenientes del sector púbico durante el tiempo en que estuvieron cesanteados ilegalmente. No obstante, entendemos que no procede esa deducción cuando se trata de trabajos provenientes de la esfera privada.

Sabido es que cuando un empleado es separado de su trabajo por actuaciones ilegales de su patrono, con frecuencia se da a la tarea de obtener un trabajo en otro lugar. Esto, como medida reparadora ante los daños que puede suponer la pérdida inesperada de un empleo. Sin duda, es una manera de mitigar los daños.[64] La empresa privada permite esa opción. Entonces, ¿por qué deducir unos salarios que son el medio por el cual el empleado cesanteado ilegalmente tiene la posibilidad de

---

[64]La doctrina de mitigación de daños postula el deber que tiene una persona que sufre perjuicios de adoptar aquellas medidas razonables pertinentes y que están a su alcance tendentes a reducir el monto de los mismos. *Véanse* <u>Fresh-O-Baking Co. v. Molinos de PR</u>, 103 DPR 509 (1975); <u>Odriozola v. S. Cosmetic Dist. Corp.</u>, 116 DPR 485 (1985).

cumplir con sus responsabilidades (personales y familiares) y aminorar los perjuicios causados por una acción ilegal de su patrono? ¿Por qué ensañarse con el empleado que actúa diligentemente y hace un esfuerzo razonable por remediar su situación? ¿Acaso la normativa vigente no fomenta que el empleado cesanteado se cruce de brazos y no busque atemperar los menoscabos sufridos? ¿Acaso esta actitud de falta de diligencia en mitigar los daños no ha sido rechazada constantemente por esta Curia? Para despejar estas interrogantes de umbral, revocaría parcialmente nuestro dictamen en Hernández v. Mun. de Aguadilla, *supra*. Ello, pues, descontar los salarios devengados del pago de los haberes dejados de percibir por razón de la cesantía ilegal a la que fueron expuestos los empleados, constituye penalizar a quien evita un daño mayor. Así, se premia al que actúa ilegalmente y, peor aún, se atropella a quien vindica su derecho.

Así las cosas, devolvería el caso al foro administrativo correspondiente. Ordenaría a ese foro la celebración de una vista evidenciaria para que se demuestre quiénes de los cesanteados trabajaron en el servicio público durante el periodo de la cesantía ilegal. Ello para que, cónsono con lo que hoy resolvemos, pueda descontarse de la cuantía que tiene que satisfacer el Departamento, los salarios devengados por razón de trabajo en el sector público durante el

tiempo de cesantía. En atención al segundo error señalado, en la vista se podrá presentar prueba a fin de conocer quiénes de los cesanteados pasaron a trabajar con la privatizadora adquiriente o no aceptaron el trabajo ofrecido por ésta.

## VII

A tenor con los fundamentos expuestos, confirmaría el dictamen emitido por el Tribunal de Apelaciones que ordenó la reinstalación de los cesanteados, unido a los otros remedios que la legislación aplicable y ahora derogada, expresamente contemplaba. Resolver en contrario conlleva la pesada carga de abandonar los principios fundamentales de hermenéutica y nuestros propios pronunciamientos jurisprudenciales. No avalaremos una distinción conceptual *a posteriori* entre destitución y cesantías porque, además de carecer de un claro soporte legislativo, estatutario o jurisprudencial, carga consigo el nefasto efecto de castigar al que solo procura su sustento y el de los suyos, a la vez que premia al que incurre en prácticas ajenas a la ley. Por ello, estoy obligado a disentir en ese extremo.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Maggie Acevedo Sepúlveda y otros | | |
|---|---|---|
| Recurridos | | |
| v. | CC-2012-1050 | |
| Departamento de Salud | | |
| Peticionario | | |

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez.

San Juan, Puerto Rico, a 28 de mayo de 2014

Disiento del curso trazado en la Sentencia que hoy dicta una mayoría de este Tribunal por entender que el pago de los beneficios marginales y haberes dejados de percibir concedidos como remedio deben ser equivalentes a un periodo de cinco años, que es el término que se proveía para que los empleados permanecieran en el registro de personas elegibles, y no un término a contarse desde la cesantía ilegal hasta la venta del último centro u hospital del Departamento de Salud. Determinación ésta, a todas luces, arbitraria. Veamos.

I

Los hechos que dan lugar a la reclamación de epígrafe se resumen adecuadamente en la Sentencia del Tribunal por lo que consideramos innecesario reproducirlos. Pasemos

entonces a la discusión del derecho aplicable a la controversia ante nuestra consideración.

II

En el 1993 la Asamblea Legislativa aprobó la Ley de la Administración de Seguros de Salud de Puerto Rico, Ley Núm. 72 de 7 de septiembre de 1993, 24 L.P.R.A. sec. 7001 *et seq*. ("Ley Núm. 72"), para reformar los servicios de salud que hasta entonces se ofrecían en el gobierno del Estado Libre Asociado.[65] Mediante la Ley Núm. 72, se delegó en la Administración de Seguros de Salud de Puerto Rico, la responsabilidad de "implantar, administrar y negociar, mediante contratos con aseguradores, y/u organizaciones de Servicios de Salud. . . .un sistema de seguros de salud que eventualmente le brinde a todos los residentes de la Isla acceso a cuidados médico-hospitalarios de calidad, independientemente de la condición económica y capacidad de pago de quien los requiera". 24 L.P.R.A. sec. 7001.

---

[65]La implementación de la Ley Núm. 72 tuvo como consecuencia que el Gobierno abandonara su "función tradicional de proveedor de servicios, sobre todo para el sector médico-indigente de la población, para convertirse en agente fiscalizador, evaluador y regulador de los sistemas de salud y asumir el papel de promotor de la salud y procurador del paciente". Exposición de Motivos de la Ley para Reglamentar el Proceso de Privatización de las Instalaciones de Salud Gubernamentales, Ley Núm. 190 de 5 de septiembre de 1996, 24 L.P.R.A. sec. 3301 *et seq*. También le permitió al Gobierno arrendar o, de otro modo, transferir a entidades privadas las instalaciones de salud pública que habían estado operando para que estas instalaciones fueran operadas como empresas privadas. *Id*.

Para reformar adecuadamente los servicios de salud se aprobó la Ley para Reglamentar el Proceso de Privatización de las Instalaciones de Salud Gubernamentales, Ley Núm. 190 de 5 de septiembre de 1996, 24 L.P.R.A. sec. 3301 *et seq.* ("Ley Núm. 190").[66] En esencia, la Ley Núm. 190 buscaba salvaguardar los intereses gubernamentales en las instalaciones que el Gobierno cediera, entre otros, en arrendamiento a entidades privadas. Exposición de Motivos de la Ley Núm. 190 de 5 de septiembre de 1996, 24 L.P.R.A. sec. 3301 *et seq.*

El artículo 19 de la Ley Núm. 190 regulaba lo que habría de ocurrir con los empleados del Departamento de Salud que laboraran en una institución de salud al momento de su privatización y no pasaran a trabajar con el privatizador. En particular, el artículo 19 disponía que los derechos de esos empleados iban a ser garantizados a tenor con la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, 3 L.P.R.A. sec. 1301 *et seq.* ("Ley Núm. 5").[67] A su vez, ordenaba que se estableciera un registro especial de los empleados que no pasaran a formar parte de la plantilla de trabajo del privatizador de suerte que pudieran ser reubicados en otras agencias gubernamentales o en la

---

[66]Esta ley fue derogada por la Ley Núm. 3 de 1 de enero de 2003, 24 L.P.R.A. sec. 3326 *et seq.*

[67]Esta ley fue derogada por la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Ley Núm. 184 de 3 de agosto de 2004, 3 L.P.R.A. sec. 1461 *et seq.*

empresa privada.[68] El artículo 4.6 (6) de la Ley Núm. 5

disponía que:

---

[68] El artículo 19 de la Ley Núm. 190 de 5 de septiembre de 1996, el cual fue enmendado por la Ley Núm. 31 de 6 de julio de 1997, disponía lo siguiente:

El arrendamiento, subarrendamiento, venta, cesión, permuta o contratación mediante cualquier otro modelo de contratación que el Secretario, en unión con el Banco, determine conforme a la discreción que le confiere esta Ley, con relación a una o más instalaciones de salud gubernamentales a una entidad o intereses privados no establecerá relación de patrono y empleado entre el contratista y el Banco ni entre el contratista y el Departamento y así se establecerá en el contrato. En cuanto a los empleados regulares del Departamento que laboren en la instalación o instalaciones al momento de tal privatización, y que no pasen a ser empleados de la entidad contratante, el Departamento velará por el cumplimiento de las disposiciones de la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, y las otras leyes y reglamentos aplicables. La entidad contratante no incurrirá en responsabilidad alguna con aquellos empleados del Departamento que no emplee.

La Oficina de Gerencia y Presupuesto y la Oficina Central de Administración de Personal serán partícipes, junto al Secretario, de la coordinación necesaria a los efectos del proceso de reubicación y cesantías. Se creará un registro especial en dichas agencias para conceder preferencia a los empleados que no sean transferidos a las empresas adquirientes para su reubicación a través de los diferentes organismos gubernamentales y en la empresa privada.

Para lograr este propósito el Secretario, en unión con la Oficina de Gerencia y Presupuesto, nombrarán un Coordinador de Reubicación. Este funcionario establecerá las normas para el referimiento y selección de los candidatos a los diferentes organismos gubernamentales. También coordinará con la Administración de Fomento Comercial la extensión de los beneficios del Programa Vale Empleo y Vale Empleo Plus de forma preferencial a todos los empleados que no sean transferidos a las empresas adquirientes. El Departamento del Trabajo dará prioridad a los empleados cuyos nombres aparecen en dicho registro, en sus programas de empleo, reempleo y adiestramiento, tales como los

> Se podrán decretar cesantías en el servicio **sin que esto se entienda como destitución**, en los siguientes casos:
>
> (a) **Debido a la eliminación de puestos por falta de trabajo o de fondos,**
>
> ....
>
> En la situación descrita en la cláusula (a) de este inciso la separación del servicio se hará según se establezca mediante reglamento al respecto en el que se tome en consideración entre otros factores el status de los empleados y su antigüedad y el tiempo en servicio.

3 L.P.R.A. sec. 1336 (Énfasis suplido).

Para instrumentar el mandato contenido en el artículo 4.6 (6) de la Ley Núm. 5 se aprobó el Reglamento Núm. 2186, conocido como el *Reglamento de Personal: Áreas Esenciales al Principio de Merito*, Reg. Núm. 2186 de 1 de octubre de 1976. En éste se reguló el proceso que se utilizaría cuando se decretaran cesantías. En específico, en su artículo 9.3 el Reglamento disponía que se podía separar del servicio a cualquier empleado, sin que se entendiera como una destitución, cuando se eliminaran puestos por falta de trabajo o fondos. Reg. Núm. 2186 de 1 de octubre de 1976, art. 9.3. En ese caso, la autoridad nominadora tenía que establecer un método para decretar las cesantías y el método debía ser comunicado a los empleados. Reg. Núm. 2186 de 1 de octubre de 1976, art. 9.3. Asimismo, el artículo 9.3 disponía el orden de prelación que la autoridad nominadora debía aplicar al

---

adiestramientos profesionales por la Administración del Derecho al Trabajo y los del Negociado de Fomento al Trabajo.
Sección 15 de la Ley Núm. 31 de 6 de julio de 1997.

decretar las cesantías dentro de cada grupo de empleados, a saber: entre los transitorios, probatorios y regulares. Reg. Núm. 2186 de 1 de octubre de 1976, art. 9.3. Se indicaba que la autoridad nominadora debía primero separar a los empleados transitorios, luego a los empleados probatorios y por último a los empleados regulares.[69] Reg. Núm. 2186 de 1 de octubre de 1976, art. 9.3.

Por otro lado y relacionado a los derechos de los empleados cesanteados, en el artículo 5.18 de la Ley Núm. 5 se disponía que:

> Las siguientes disposiciones regirán el reingreso de los empleados al servicio público:
>
> (1) Los empleados regulares que renuncien a sus puestos **o sean cesanteados por eliminación de puestos**, o por incapacidad al recuperar de la misma, **tendrán derecho a que sus nombres se incluyan en el registro de elegibles correspondientes a las clases de puestos que ocupaban con carácter regular u otras similares que envuelvan el mismo nivel de trabajo.**
> . . . .
>
> (4) A las personas con derecho a reingreso y que deseen ejercerlo, se les aplicará la legislación vigente a la fecha de la radicación de la solicitud.
> (5) Las condiciones, el orden y la forma en que los nombres han de colocarse en el registro será establecida por las normas que se promulguen al efecto.

---

[69] Según el artículo 9.3 del Reglamento Núm. 2186, la autoridad nominadora, dentro de cada grupo de empleados, tenía que tomar en consideración el desempeño de cada uno, de manera que los menos eficientes fueran cesanteados primero. Si había igualdad con respecto al desempeño de los empleados o no había suficiente información para determinar el desempeño, la autoridad nominadora tenía que tomar en consideración el tiempo en el servicio de cada uno, de manera que los empleados con menos tiempo en el servicio fueran cesanteados primero. Reg. Núm. 2186 de 1 de octubre de 1976, art. 9.3.

(6) La solicitud a reingreso deberá radicarse en cualquier tiempo durante el período de cinco (5) años siguientes a la fecha de separación; [d]isponiéndose, que la anterior no le será de aplicación a la situación prevista en el inciso (2) de esta sección, en cuyo caso se ejercerá el derecho en cualquier momento.

(7) **Los nombres de las personas incluidas en los registros de elegibles correspondientes figurarán en los mismos por un término de cinco (5) años a partir de la fecha de separación** a excepción de la situación prevista en el inciso (2) de esta sección.

3 L.P.R.A. sec. 1358 (Énfasis suplido).

Como se puede observar, el artículo 5.18, 3 L.P.R.A. sec. 1358, le concedía a los empleados cesanteados por eliminación de puestos el derecho a ser incluidos en un registro de personas elegibles, correspondientes a las clases de puestos que ocupaban por un término de cinco años a partir de la fecha de separación del empleo. **Éste era el remedio que expresamente les concedía la ley a los empleados cesanteados.**

Sin embargo, según el artículo 7.14 de la Ley Núm. 5, 3 L.P.R.A. sec. 1394, esos empleados también podían acudir a la Junta de Apelaciones del Sistema de Administración de Personal.[70] Particularmente, el artículo 7.14 disponía que:

Con sujeción a las excepciones que se establecerán más adelante en esta ley, se podrá apelar de las acciones o decisiones de la Oficina Central, de los Administradores Individuales, y de las autoridades nominadoras,

---

[70] Esta Junta fue derogada por la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Ley Núm. 184 de 3 de agosto de 2004, 3 L.P.R.A. sec. 1461 *et seq*.

en los casos y por las personas que se especifican a continuación:

(1) En casos de destitución o suspensión de empleo y sueldo por un empleado de carrera que esté dentro del Sistema de Personal, **o cuando alegue que una acción o decisión que le afecta viola cualquier derecho que se le conceda a virtud de las disposiciones de esta ley, del reglamento que se apruebe para instrumentar esta ley, o de los reglamentos adoptados por los Administradores Individuales para dar cumplimiento a esta ley. Las acciones que interpongan los empleados y que estén relacionadas con las áreas esenciales al principio de mérito, según señaladas en la sec. 1331 del título 3, serán vistas en primera instancia por la Junta.**

3 L.P.R.A. sec. 1394 (Énfasis suplido).

Con respecto a los remedios que podía conceder la Junta de Apelaciones del Sistema de Administración de Personal en los casos que tuviera jurisdicción según la ley, el artículo 7.17 de la Ley Núm. 5 establecía que:

(1) **En los casos en que la Junta resuelva a favor del querellante, dictará las órdenes remediales pertinentes.**

(2) **En casos de destitución,** si la decisión de la Junta es favorable al empleado, ésta deberá ordenar su restitución a su puesto, o a un puesto similar. Asimismo deberá ordenar el pago total o parcial de los salarios dejados de percibir por éste desde la fecha de la efectividad de la destitución, y la concesión de todos los beneficios marginales a que éste hubiese tenido derecho.

(3) **En casos de suspensión de empleo y sueldo,** si la decisión de la Junta es favorable al empleado, deberá ordenar el pago total o parcial de los salarios dejados de percibir por éste y de todos los beneficios marginales a que éste hubiese tenido derecho durante el período de suspensión.

3 L.P.R.A. sec. 1397 (Énfasis suplido).

Se desprende del artículo 7.14, 3 L.P.R.A. sec. 1394, que los empleados que habían sido destituidos o suspendidos de empleo y sueldo, así como a los que la

autoridad nominadora les había violado algún derecho concedido por ley o reglamento, tenían derecho a acudir a la Junta de Apelaciones del Sistema de Administración de Personal. Por otro lado, se desprende del artículo 7.17, 3 L.P.R.A. sec. 1397, que el legislador distinguió los remedios que debía conceder la Junta en casos de destitución o de suspensión de empleo y sueldo de los remedios en los otros casos. A saber, cuando no se tratara de una destitución o de una suspensión de empleo y sueldo, la Ley Núm. 5 le permitía a la Junta conceder los remedios que entendiera pertinentes. Adviértase que venimos obligados a interpretar de manera armoniosa las distintas disposiciones de una ley, y no aisladamente.

III

Expuesto el derecho aplicable, estoy conforme con la Sentencia del Tribunal en cuanto a la ilegalidad de las cesantías decretadas por el Departamento de Salud. De la prueba presentada no surge que el Departamento haya establecido el plan de cesantías requerido y que se lo haya comunicado a los empleados tal y como lo exigía el artículo 9.3 del Reglamento 2186. Reg. Núm. 2186 de 1 de octubre de 1976, art. 9.3. Además, según el testimonio del testigo que presentó el Departamento de Salud, al decretar las cesantías en cada uno de sus centros, el Departamento no tomó en consideración la antigüedad de los

empleados.[71] A su vez, el Departamento no presentó evidencia que sustentara la creación del registro de personas elegibles. Evidentemente entonces, todo lo anterior en violación a lo dispuesto en la Ley Núm. 5 y en el Reglamento Núm. 2186 de 1 de octubre de 1976.

Debido a la ilegalidad de las cesantías, una mayoría de este Tribunal concede como remedio que el Departamento abone la paga atrasada que los empleados cesanteados dejaron de percibir, restando los haberes percibidos en otros trabajos durante dicho periodo, y la concesión de todos los beneficios marginales a los que hubiesen tenido derecho "desde el momento en que ocurrió la cesantía ilegal hasta la fecha en que se vendió el último centro u hospital del Departamento".[72] Disiento de este proceder. El proceso seguido por el Departamento de Salud para implantar la política pública de privatización de las facilidades de salud del Estado Libre Asociado fue ilegal y contrario a Derecho al no ajustarse a lo exigido en la Ley Núm. 5 y en el Reglamento Núm. 2186 de 1 de octubre de 1976. Hoy, pasada más de una década, toca pagar por ese error. Considero que a tenor con el inciso 1 de la sección 7.17 de la Ley Núm. 5, 3 L.P.R.A. sec. 1397, el remedio concedido debe ser pago de los beneficios marginales y haberes dejados de percibir por un periodo de cinco años, equivalente al término que los empleados tenían derecho a

---

[71]Apéndice de la petición de *certiorari* en las págs. 644-647, 683-685.
[72]Sentencia del Tribunal en la pág. 11.

permanecer en el registro de personas elegibles, según el artículo 5.18 de la Ley Núm. 5, 3 L.P.R.A. sec. 1358, por ser este remedio el provisto en ley.

IV

Por los fundamentos discutidos disiento. Procede la paga atrasada y los beneficios marginales concedidos sólo por un periodo equivalente a cinco años.


Anabelle Rodríguez Rodríguez
Juez Asociada